UNITED STATES of America,
Plaintiff-Appellee,

v.

William D. ADAMS, a/k/a Bill Adams,
Defendant-Appellant.

No. 77-5151.

United States Court of Appeals,
Fifth Circuit.

Jan. 27, 1978.

963

Dan Ryan, Houston, Tex., for defendant-appellant.

J. A. Canales, U. S. Atty., James R. Gough, Mary L. Sinderson, Asst. U. S. Attys., Houston, Tex., for plaintiff-appellee.

Before WISDOM and GEE, Circuit Judges, and VAN PELT *, District Judge.

WISDOM, Circuit Judge:

William D. Adams appeals from his conviction upon a guilty plea of possessing cocaine with intent to distribute it in violation of 21 U.S.C. § 841(a)(1). He contends that his plea was involuntary and that the district court failed to comply with Federal Rule of Criminal Procedure 11, which establishes detailed procedures for accepting guilty pleas. We hold that the district court must comply strictly with Rule 11.

"Plea bargains have accompanied the whole history of this nation's criminal jurisprudence." *Bryan v. United States*, 5 Cir. 1974, 492 F.2d 775, 780, *cert. denied*, 419 U.S. 1079, 95 S.Ct. 668, 42 L.Ed.2d 674 (1974). The pragmatic need for plea bar-

* Senior District Judge of the District of Nebraska, sitting by designation.

gaining must be reconciled, however, with the constitutional requirement that the plea be voluntary. In 1966 the rule was amended to forbid the court to accept the plea "without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the voluntariness of the plea". Even after the 1966 amendment some courts still held that substantial compliance would satisfy the rule. *Waddy v. Heer*, 6 Cir. 1967, 383 F.2d 789, 794, *cert. denied*, 392 U.S. 911, 88 S.Ct. 2069, 20 L.Ed.2d 1369 (1968). *McCarthy v. United States*, 1969, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418, put an end to that view of Rule 11. Under its supervisory power, the Supreme Court held in *McCarthy* that there must be strict compliance with the rule.

On December 1, 1975, Fed.R.Crim.P. 11 was tightened by amendments providing that trial judges accepting guilty pleas "must address the defendant personally in open court", inform him of certain constitutional rights, certain consequences of his plea, and the nature of the charges to which he is pleading.[1] The trial judge must also determine that the defendant understands what he is told. In *United States v. Aldridge*, 5 Cir. 1977, 553 F.2d 922 (per curiam), we held that the adoption of the new amendments did not change the rule in this circuit that "compliance with Rule 11 must be literal".[2]

Here, the trial judge complied with Rule 11 in informing the defendant of the maximum sentence he faced and of his right to a jury trial. The defendant had received the

---

1. Rule 11, as amended, provides in relevant part:

(c) *Advice to Defendant.* Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform him of, and determine that he understands, the following:

(1) the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law; and

(2) if the defendant is not represented by an attorney, that he has the right to be represented by an attorney at every stage of the proceeding against him and, if necessary, one will be appointed to represent him; and

(3) that he has the right to plead not guilty or to persist in that plea if it has already been made, and that he has the right to be tried by a jury and at that trial has the right to the assistance of counsel, the right to confront and cross-examine witnesses against him, and the right not to be compelled to incriminate himself; and

(4) that if he pleads guilty or nolo contendere there will not be a further trial of any kind, so that by pleading guilty or nolo contendere he waives the right to a trial; and

(5) that if he pleads guilty or nolo contendere, the court may ask him questions about the offense to which he has pleaded, and if he answers these questions under oath, on the record, and in the presence of counsel, his answers may later be used against him in a prosecution for perjury or false statement.

(d) *Insuring That the Plea is Voluntary.* The court shall not accept a plea of guilty or nolo contendere without first, by addressing the defendant personally in open court, determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement. The court shall also inquire as to whether the defendant's willingness to plead guilty or nolo contendere results from prior discussions between the attorney for the government and the defendant or his attorney . . .

2. We recognize that the Courts of Appeals for the Second and Eighth Circuits have approved certain slight deviations from strict compliance with Rule 11. *See United States v. Michaelson*, 2 Cir. 1977, 552 F.2d 472, 477; *United States v. Journet*, 2 Cir. 1976, 544 F.2d 633, 637 n.6; *United States v. Saft*, 2 Cir. 1977, 558 F.2d 1073, 1080; *United States v. Scharf*, 8 Cir. 1977, 551 F.2d 1124, 1130.

The Supreme Court announced in 1969 that "any noncompliance with Rule 11 is reversible error". *McCarthy v. United States*, 1969, 394 U.S. 459, 464 n.9, 89 S.Ct. 1166, 1170, 22 L.Ed.2d 418, 424 n.9. The procedure embodied in Rule 11 has two purposes: "First, . . . it is designed to assist the district judge in making the constitutionally required determination that a defendant's guilty plea is truly voluntary. Second, the Rule is intended to produce a complete record at the time the plea is entered of the factors relevant to this voluntariness determination. Thus, the more meticulously the Rule is adhered to, the more it tends to discourage, or at least to enable more expeditious disposition of, the numerous and often frivolous post-conviction attacks on the constitutional validity of guilty pleas." *McCarthy v. United States*, 1969, 394 U.S. 459, 465, 89 S.Ct. 1166, 1170, 22 L.Ed.2d 418, 424–25 (footnotes omitted). *See Sierra v. Government of Canal Zone*, 5 Cir. 1977, 546 F.2d 77, 79; *Sassoon v. United States*, 5 Cir. 1977, 561 F.2d 1154, 1157.

indictment and had gone over it with his counsel. The trial judge, however, did not inform the defendant "personally" that he "has the right to the assistance of counsel, the right to confront . . . witnesses against him, and the right not to be compelled to incriminate himself". The trial judge did not inform the defendant personally of the nature of the charge to which he pleaded. Because Rule 11 required the trial judge to inform the defendant of these matters, we must reverse the judgment and remand the case to the district court.

## I

The colloquy between the trial judge and the defendant on which this appeal is based is set forth in the margin.[3] After the collo-

3. The following colloquy between the defendant and the trial judge took place in open court:

THE COURT: Have you received a copy of the indictment that has been filed against you in this case?

THE DEFENDANT: Yes, sir.

THE COURT: Have you had an opportunity to go over it with your counsel?

THE DEFENDANT: Yes, sir.

THE COURT: As I understand it, you pleaded not guilty originally before the magistrate and at this time you wish to be re-arraigned. Is that correct?

THE DEFENDANT: That is true, sir.

THE COURT: Are you ready now to plead to the indictment?

THE DEFENDANT: Yes, sir.

THE COURT: Do you want it read to you or will you waive the reading of it?

MR. JOSEPH [The Defense Attorney]: We will agree to it.

MR. ROZAN [The Prosecutor]: We appreciate the court's indulgence in this matter for re-arraignment, and I would like to arraign the defendant on count two.

THE COURT: All right.

(COUNT TWO OF THE INDICTMENT READ)

MR. ROZAN: To count two of this indictment, how do you plead, William D. Adams, guilty or not guilty?

THE DEFENDANT: Guilty.

MR. ROZAN: Your Honor, we are seeking re-arraignment only as to count two and deferring of any subsequent re-arraignment on counts one and three, and we will be dismissing that, of course, at the time of sentencing.

THE COURT: All right. Mr. Adams, I can't accept your plea of guilty unless I am convinced that it is willfully and knowingly made and that you are in fact guilty. So I am going to ask the clerk to swear you so I can ask you some questions at this time under oath.

(SWORN)

THE COURT: Mr. Adams, do you understand that by pleading and entering this voluntary plea of guilty that you give up your right to a speedy trial before either a judge or jury, you understand you waive your right to a speedy and public trial?

THE DEFENDANT: I do.

THE COURT: You understand at such trial you would be indulged with the presumption of innocence until the government proved your guilt beyond a reasonable doubt. You understand that?

THE DEFENDANT: Yes.

THE COURT: You understand at such trial you would be afforded an opportunity to cross-examine the witnesses the government brought against you, and to bring witnesses to testify on your behalf, and you are waiving your right to that?

THE DEFENDANT: I do.

THE COURT: You understand that the penalty the court could impose upon you is 15 years in the penitentiary or $25,000 fine or both?

THE DEFENDANT: I do.

MR. ROZAN: I'm sorry to interrupt. Additionally we would like to apprise him of the fact that there is an additional parole term of at least three years.

THE COURT: Yes, do you understand that?

THE DEFENDANT: Yes.

THE COURT: Have any threats or promises been made to you to induce you to plead guilty in this case?

THE DEFENDANT: No, sir.

THE COURT: Has anyone told you that the court might be more lenient with you if you pleaded guilty rather than stand trial?

THE DEFENDANT: No, sir.

THE COURT: Did you indeed commit the offense?

THE DEFENDANT: I did.

THE COURT: Tell be briefly in your own words what you did.

THE DEFENDANT: Well, I received or found some cocaine in my place, what the charge is there, and had a choice of throwing it away or giving it to somebody, and I give it to a guy that—I gave it to an undercover agent and told him to check it out and find out what it was worth, and that's how I got involved in the thing.

THE COURT: Did you intend to distribute it or sell it?

THE DEFENDANT: Well, it didn't start out that way, I just got involved in the whole thing, and the next thing you know the narcotic agents get back with me later on and say "here's fifteen hundred, a partial payment," they say, and they give it to me and I give the person that put me in touch, the

quy, the United States Attorney announced that the parties had entered into a plea bargain. The government agreed that in return for Adams' guilty plea to count two, it would move to dismiss the other two counts.[4] In addition, the government agreed that in return for Adams' testifying against his codefendants, it would not oppose probation. Finally, the government agreed to seek expansion of the territorial limits of Adams' bond and to seek Adams' release as surety on the codefendant's bond.

Adams also executed a written guilty plea form in the court's presence. The form stated that Adams understood "the elements of the offense", recounted that Adams had the right to counsel and the right to stand trial regardless of guilt, and accurately listed the maximum sentence including the special parole term. The form also stated that Adams had received no promise of leniency for pleading guilty nor threat of harshness for standing trial and that no promise of leniency would be binding on the court. The form announced that the only bargain had been the government's agreement to dismiss two of the three counts.

The court accepted the guilty plea. Three months later, on January 25, 1977, Adams appeared for sentencing. He told the court that he found the cocaine at his home and had given it to an undercover agent to find out what it was. The court sentenced him to three years imprisonment and a three-year special parole term.

## II.

■ Plea bargaining passes constitutional muster only if it is voluntary. Rule

narcotic agent, five hundred dollars and I took a thousand of it and that's what I did.
THE COURT: Mr. Joseph, I will ask you, do you know of any reason why the defendant should not plead guilty?
MR. JOSEPH: No, Your Honor, I do not.
THE COURT: I find that there is a factual basis for your plea and that it is knowingly and willfully made and therefore I accept your plea of guilty and on your plea find you guilty and ask that you execute the written plea of guilty form at this time.
(WRITTEN PLEA SIGNED)

11 imposes strict procedural requirements to keep plea bargaining within acceptable constitutional standards. In addition, under the Supreme Court's supervisory power, the trial judge is allowed no latitude to depart from Rule 11. He must inform the defendant of the nature of his rights, and determine that the defendant understands what his rights are and what he is giving away.

### A. *Constitutional rights.*

■ Here the trial judge did not personally inform the defendant that he "has the right to the assistance of counsel, the right to confront . . . witnesses against him, and the right not to be compelled to incriminate himself". Rule 11(c)(3) requires that a defendant be personally informed of those three rights.[5] Adams therefore must be allowed to plead again. *McCarthy v. United States*, 1969, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418; *United States v. Aldridge*, 5 Cir. 1977, 553 F.2d 922 (per curiam).

The trial judge instructed Adams that he had a right to a "speedy trial before either a judge or jury", but that statement does not clearly state that the choice belongs to Adams. The defendant said that he understood that he was waiving this right. We suggest that this statement could be clarified by specifying that it is the defendant who makes the choice whether to be tried before a judge or before a jury. Nevertheless, in this respect we conclude that the language of the trial judge comports with the rule.

### B. *Nature of the charge.*

■ The trial judge did three things to inform the defendant of the nature of the

4. Count one charged conspiracy. 21 U.S.C. § 846. Count two charged possession with intent to distribute. 21 U.S.C. § 841(a)(1). Count three charged distribution. *Id.*

5. Rule 11(c)(3) specifies that the defendant must be informed of "the right to confront and cross-examine witnesses against him". Although the right to cross-examine may be subsumed in the confrontation right, the statute requires that both be mentioned.

charge to which he pleaded and to determine that the defendant understood the nature of the charge. First, the trial judge determined from Adams that he had received the indictment and gone over it with his attorney. Second, the charge was read to Adams. Third, after Adams described the transfer of the cocaine in his own words, the trial judge asked him if he "intend[ed] to distribute or sell" the cocaine he described transferring.[6] Curiously, in spite of the plea bargain, Adams denied that he had intended to distribute the cocaine, a statement that might have aroused doubts as to Adams' understanding of his plea.

The trial court, however, made no attempt to explain the charge and did not ask Adams whether he understood it.

■ We hold that the trial judge did not properly inform Adams of the nature of the charge he faced and did not determine that he understood the charge. In dictum in *United States v. Coronado*, 5 Cir. 1977, 554 F.2d 166, 174 n.12, we reserved the question whether amended Rule 11's additional requirement that the trial court inform the defendant of the nature of the charge must be literally construed. Following *McCarthy v. United States*, 1969, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418, and *United States v. Aldridge*, 5 Cir. 1977, 553 F.2d 922 (per curiam), we now hold that the trial court

must personally inform the defendant of the nature of the charge to which he pleads. The trial court must also, as we have held previously, determine that the defendant understands the nature of the charge.[7]

■ To inform a defendant of the nature of the charge must mean more to having the indictment read to the defendant. Reading the indictment informs the defendant of the technical charge. But the trial court should proceed "on the assumption that the defendant is ignorant of the nature of the charges". *United States v. Coronado*, 5 Cir. 1977, 554 F.2d 166, 172. In most cases only the most sophisticated defendant would be informed of the nature of the charge by a reading of the indictment without more.

■ In *Coronado*, Judge Goldberg, writing for the Count, suggested the use of jury instructions as a pattern for explaining to defendants the nature of the charges to which they are pleading. We need not adopt such a requirement now, for different cases may require different explanations. Some defendants are more sophisticated than others. *See United States v. Saft*, 2 Cir. 1977, 558 F.2d 1073, 1079. Some charges are more difficult to understand than others. *United States v. Coronado*, 554 F.2d at 172.[8] But "no matter how

---

**6.** The government contends the written guilty plea form cures the plea proceeding deficiencies. We disagree. Rule 11 explicitly requires the court to address the defendant "personally in open court"—not by means of a writing—and we have reversed convictions on this basis. *See, e. g., United States v. Crook*, 5 Cir. 1976, 526 F.2d 708. "Writings provide no substitute for the rule's requirement of a personal interchange between court and defendant." *United States v. Coronado*, 5 Cir. 1977, 554 F.2d 166, 175 n.13.

While it is true that in *Burroughs v. United States*, 5 Cir. 1975, 515 F.2d 824, and *United States v. Sapp*, 5 Cir. 1971, 439 F.2d 817, we approved the use of a written form as a "partial record surrogate for oral dialogue between the court and the defendant", *Burroughs*, 515 F.2d at 828, we did so on the basis of oral dialogues considerably more extensive than that involved here. In the case at bar, unlike *Burroughs* or *Sapp*, the district court failed even to ask the defendant whether he under-

stood the charge. In addition, in *Burroughs* we emphasized that reliance on a written form "hazards the due performance of the solemn responsibility of plea taking and beclouds appellate review of Rule 11 challenges to those proceedings". 515 F.2d at 828. Two years later, it is time for courts and prosecutors to grasp that message. In sum, to whatever extent *Sapp* and *Burroughs* survive the intervening revision of Rule 11, they cannot help the government here.

**7.** *See Sassoon v. United States*, 5 Cir. 1977, 561 F.2d 1154; *Canady v. United States*, 5 Cir. 1977, 554 F.2d 203; *United States v. Coronado*, 5 Cir. 1977, 554 F.2d 166; *Sierra v. Government of Canal Zone*, 5 Cir. 1977, 546 F.2d 77.

**8.** "The method by which the defendant's understanding of the nature of the charge is determined may vary from case to case, depending on the complexity of the circumstances and the particular defendant. In some cases, a judge

simple the charges, a district court should make the minor investment of time and effort necessary to set forth their meaning and demonstrate on the record that the defendant understands". *Id.* And when there is a lesser included offense, as in this case with simple possession, "personally addressing the defendant as to his understanding of the essential elements of the charge to which he pleads guilty" seems essential. *McCarthy v. United States*, 1969, 394 U.S. 459, 467 n.20, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418, 426 n.20. *See* 8 Moore's Federal Practice ¶ 11.02[1] at 11–25, *citing Dorough v. United States*, 5 Cir. 1967, 385 F.2d 887, 894 (Goldberg, J., dissenting). *See also* 1 Wright, Federal Practice and Procedure § 173.

■ Here, the trial judge made no attempt to explain the charge or to assure himself that the defendant understood it. *Cf. Canady v. United States*, 5 Cir. 1977, 554 F.2d 203, 205. Asking Adams whether he intended to distribute the cocaine was insufficient to determine whether he understood the charge. Such a question would be as proper in taking a plea to a charge of distribution as in taking a plea to a charge of possession with intent to distribute. This question is of little help in explaining to a defendant the nature of the charge to which he is pleading or in determining that he understands the charge. *See Sierra v. Government of Canal Zone*, 5 Cir. 1977, 546 F.2d 77, 80–81.

In this case it is possible that Adams has a colorable entrapment defense. Adams contended that he found the cocaine and that, at least originally, he did not intend to distribute it. Adams could not intelligently decide whether to plead without knowing the basic elements of the charge, including the intent requirement. The trial court should treat the defendant as ignorant of the nature of the charges against him. *United States v. Coronado*, 554 F.2d at 172. In cases where there are plausible defenses, a trial court might well inform the defend-

ant of the possible availability of affirmative defenses, and of the elements of the affirmative defenses. Such instruction would make it clearer that the defendant knowingly and intelligently pleaded guilty.

■ As we stated in *Coronado* :

In adhering to the rule's mandate that it address the defendant personally, the court should engage in extensive an interchange as necessary to assure itself and any subsequent reader of the transcript that the defendant does indeed fully understand the charges. With respect to some points the court may choose to have the defendant recount his or her understanding of the charges in narrative form and in his or her own language. We do not suggest an arcane definition of the legal concepts, nor a law review exegesis, but enough simple language that a person unlearned, untutored and unschooled could understand the charges.

554 F.2d at 173.

■ Moreover, a determination that the defendant has gone over the indictment with his attorney is not the determination that Rule 11 requires. This procedure, used by the trial court here, could possibly help the trial court determine that the guilty plea is voluntary, as the Constitution requires. It does not fulfill the other purpose of Rule 11, to provide a record that will show that the plea was voluntary. *See Sierra v. Government of Canal Zone*, 5 Cir. 1977, 546 F.2d 77, 79.

C. *The consequences of the plea.*

■ Rule 11, as amended, requires that the trial judge inform the defendant of the minimum and maximum sentences he faces from the charge to which he pleads. The trial judge correctly informed the defendant of the maximum sentence he faced; there is no minimum sentence for possession of cocaine with intent to distribute. 21 U.S.C. § 841(b). The trial judge complied with this aspect of Rule 11. The Rule as

may do this by reading the indictment and by explaining the elements of the offense to the defendants." 1975 Committee Note to Rule 11,

reprinted in 8 Moore's Federal Practice ¶ 11.-01[4] at 11–9.

amended is less stringent than its predecessor. Before December 1, 1975, the Rule required that the defendant be informed of "the consequences of the plea". The trial court did not explain the special parole term required by § 841(b) in connection with all active sentences. Such an explanation is no longer required under the language of the new Rule. *See* 8 Moore's Federal Practice ¶ 11.02[1] (August 1977 cum. supp. at 71–72). *See also* 1 Wright, Federal Practice and Procedure § 173. Nevertheless, such an explanation will often be helpful in determining that the plea was voluntary, as the Constitution requires.

Because the trial court did not follow Rule 11 literally, we must remand so that Adams may plea again. *McCarthy v. United States*, 1969, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418.

REVERSED AND REMANDED.

GEE, Circuit Judge, specially concurring:

I am in general agreement with the majority opinion and the result. I write to state briefly my own precise view, which I do not think is in conflict with the majority. For essentially the reasons given, and because it is now so painstakingly specific, it seems to me that Amended Rule 11 intends a litany. Not one, to be sure, for mere recitation; the trial judge must carefully and personally explore the defendant's understanding of each of its items. But a litany in the sense that we should not lightly, or perhaps not at all, undertake to add to it or diminish it by construction. Instead, it is simply to be followed as written, and if so followed, it suffices.