John Francis WALKER,
Petitioner-Appellant,

v.

WARDEN, U. S. PENITENTIARY, ATLANTA, GEORGIA,
Respondent-Appellee.

No. 78–1798.

United States Court of Appeals,
Fifth Circuit.

Feb. 2, 1979.

Opinion Vacated and Dismissed as Moot April 10, 1979.

Howard J. Manchel, Atlanta, Ga. (Court-appointed), for petitioner-appellant.

Nickolas P. Geeker, U.S. Atty., Pensacola, Fla., for respondent-appellee.

Before GEWIN, COLEMAN and GOLD-BERG, Circuit Judges.

COLEMAN, Circuit Judge.

I

This matter is before the Court on appeal from the denial of relief sought by John Francis Walker under 28 U.S.C. § 2255.

II

On April 9, 1975, Walker pled *nolo contendere* to a one count information charg-

ing him with voluntary manslaughter in violation of 18 U.S.C. § 1112. After a lengthy inquiry concerning the voluntariness of the plea, it was accepted and Walker was sentenced to the maximum term of imprisonment, ten years. Upon the plea of *nolo contendere,* the remaining charges pending against Walker, including a charge of second degree murder, were dismissed.[1]

Although Walker did not appeal this judgment, he did file a petition for habeas corpus pursuant to 28 U.S.C. § 2241 in the federal district court situated in the Northern District of Georgia. Walker sought habeas corpus relief on the grounds that his *nolo contendere* plea was not voluntarily entered and that the sentencing court had been without jurisdiction due to a violation of the Interstate Agreement on Detainers Act, 18 U.S.C. App., Article IV(e). The District Court dismissed Walker's petition without prejudice on the ground that Walker must seek relief under 28 U.S.C. § 2255 through a motion to vacate or set aside sentence, such motion to be filed in the United States District Court for the Northern District of Florida, the sentencing court.

On December 9, 1977, Walker filed such motion in the appropriate forum, raising the same grounds for relief as he had previously presented in his habeas corpus petition. A Magistrate issued a report and recommendation denying the relief requested and recommending the denial of Walker's § 2255 motion with prejudice. Judge Arnow adopted this recommendation and entered judgment against Walker. No evidentiary hearing was held.

This appeal followed.

### III

Walker contends that the sentencing court erred when it failed to explain the meaning and elements of voluntary manslaughter to him, contrary to the requirements of Rule 11 of the Federal Rules of

Criminal Procedure. The remedy for such violation, Walker further argues, is that he be permitted to plea anew.

On April 24, 1975, Walker proffered a plea of *nolo contendere* to the charge of voluntary manslaughter at an arraignment proceeding presided over by Judge Winston E. Arnow. Before accepting such plea, however, Judge Arnow conducted a lengthy Rule 11 examination, set forth in a nineteen page transcript.

The prosecuting attorney took great care to determine whether Walker understood the offense he was charged with. Walker was asked whether he had seen the information which, we note, charged that "upon a sudden quarrel and heat of passion, [he] unlawfully and willfully" killed Dalton Jackson Hill, whether his attorney had "gone over" the information with him, and, finally, whether he understood its contents. Walker responded affirmatively to all three questions. Next, Walker signed a waiver of indictment form which referred to the voluntary manslaughter charge "as set forth in the waiver and consent" form. Finally, the prosecutor read aloud the information which included the language noted above. Walker was asked how he pleaded to "this charge", to which he responded by pleading *nolo contendere.*

The district judge then took over the Rule 11 examination. He first advised Walker that as a matter of law the judge had to "determine whether that plea is tendered by you here freely and voluntarily and with full understanding of the nature of the charge and of the consequences of that plea" before accepting Walker's plea. To facilitate this determination, it was explained, Judge Arnow chose to ask Walker questions concerning a "waiver and consent" form which contained the charge that he "unlawfully and willfully" killed another.

---

1. Walker was indicted on November 6, 1974, for the offense of second degree murder in Pensacola Criminal Action 74–130. The government successfully moved to dismiss this charge, as well as other charges, the identity of which cannot be ascertained from this record, in Pensacola Criminal Action 74–139.

In the ensuing colloquy between the court and Walker, it was determined that Walker's attorney had gone over the waiver and consent form with him and that Walker was aware that by signing such form and by orally advising the court concerning such form that he was acknowledging, under oath, that he understood "the charge against you as it's set forth in that paragraph one, and of course, as it's set forth in the information". Walker further acknowledged that he had seen a copy of this form prior to arraignment and that he was proffering his plea with full understanding of the nature of the charge against him.

Following this inquiry the prosecutor read to the court a stipulated statement of facts. According to this stipulation the decedent "had been stabbed by defendant during an argument . . . and his bleeding body was dragged by defendant from the car". When questioned by police about the blood in the car Walker was driving, he "concocted the story concerning the rabbit" he had run over and placed in the car "inasmuch as he had no other explanation for the blood . . . and felt he had to offer some explanation". Finally, after Walker's arrest on another felony charge, but prior to his arrest for the stabbing of Hill, Walker questioned a fellow inmate concerning "how long it would take for opossums and buzzards to consume a human body so authorities could not determine the cause of death".

Walker acknowledged that the facts as stipulated would be developed at trial, if there were to be one.

The district judge, concluding that Walker's plea was entered voluntarily and that the stipulated facts satisfied all the essential elements of the charged offense, accepted the plea.

■ The Rule 11 examination comported with the requirements of Rule 11 as they existed prior to the 1975 amendments.[2] Rule 11 then provided, *inter alia,* that a court may not accept a plea of *nolo contendere*

> without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the consequence of the plea.

Although "no particular ritual" had been required in order to comply with the old Rule 11, *Dorrough v. United States,* 5 Cir., 1967, 385 F.2d 887, 890, *adopted,* 397 F.2d 811 (1968), *cert. denied,* 394 U.S. 1019, 89 S.Ct. 1637, 23 L.Ed.2d 44 (1969); *Hulsey v. United States,* 5 Cir., 1966, 369 F.2d 284, 286, more than "routine questions on the subject of understanding" or a single "I understand" response was necessary, *Dorrough v. United States, supra.* See, *also, United States v. Lincecum,* 5 Cir., 1978, 568 F.2d 1229, 1231.

■ The particular type of inquiry required will necessarily vary from case to case. *See McCarthy v. United States,* 394 U.S. 459, 467 n. 20, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969). In determining whether the Rule 11 "understanding" inquiry is adequate we have focused on the degree to which the defendant has been apprised of the offense he has been charged with committing,[3] the complexity of the charge,[4] and

---

**2.** The pertinent amendments to Rule 11 went into effect on December 1, 1975. We have held that such amendments do not apply to pleas taken prior to that date, *Howard v. United States,* 5 Cir., 1978, 580 F.2d 716, 721; *United States v. Coronado,* 5 Cir., 1977, 554 F.2d 166, 169 n. 2, *cert. denied,* 434 U.S. 870, 98 S.Ct. 214, 54 L.Ed.2d 149 (1978); *Goodwin v. United States,* 5 Cir., 1977, 544 F.2d 826; *Summers v. United States,* 5 Cir., 1976, 538 F.2d 1208, 1210 n. 2. Walker's plea was accepted on April 24, 1975.

**3.** *United States v. Coronado, supra,* at 173 n. 10 (prosecutor and court reference to "knowingly

and intentionally" charge and intent implicit in action) (dictum); *Sierra v. Government of Canal Zone,* 5 Cir., 1977, 546 F.2d 77, 81 (misleading reference to charge and absence of any reference to crucial element of intent); *Goodwin v. United States, supra,* at 827 (detailed inquiry); *Dorrough v. United States, supra,* (detailed inquiry; charge appeared in all documents presented to defendant; defendant informed of factual basis).

**4.** *Id.* at 891 (statutory offense not "complicated or difficult to understand" : and precisely described defendant's actions). *See, also, United*

the characteristics of the particular defendant involved.[5]

■ Walker contends that neither the court nor the prosecutor specifically explained the meaning of the charge to him but the record refutes this contention. There were lengthy, detailed colloquies between the defendant and the prosecutor and between the defendant and the court concerning Walker's understanding of the offense charged in the information. The nature of the offense was described in the information, in the waiver and consent form, and in the waiver of indictment. The prosecutor read the information to the defendant in open court; he also recited the basic facts constituting the offense. The record leaves us in no doubt that the defendant knew that the manslaughter with which he was charged was an "unlawful killing of a human being without malice . . . upon a sudden quarrel or heat of passion", 18 U.S.C. § 1112(a). The defendant had numerous opportunities to deny the charge or the stipulated facts or that he understood the nature and meaning of the charge. He did none of this.

Finally, Walker was not a stranger to the courtroom. The record indicates that he has a criminal record. He has spent most of the last six years in "prison or other correctional facilities". Indeed, Walker was serving ten years for armed robbery and attempted kidnapping at the time he was arrested for the murder of Hill. Moreover, based on his conduct at the arraignment, Walker was alert. Although Walker primarily indicated agreement with the court or an understanding of the court's inquiries, he also was candid enough to admit when he did not understand one of the district judge's questions.

■ Walker next contends that the district judge erred in failing to conduct the Rule 11 "understanding" personally. Although the court did not itself conduct the entire examination, it is clear from the record, as reflected *supra,* that the court questioned Walker at length and in detail concerning his familiarization with the charge, whether he understood such, and the basic facts constituting the offense charged. That the prosecutor, in the court's presence, rather than the district judge, informed Walker of the exact charge and the underlying facts is of no legal significance. Rule 11, prior to the 1975 amendments, did not

require that the court itself explain the [nature of the charge] to the defendant, only that it personally address him to ensure that he understood them.

■ *See Howard v. United States,* 5 Cir., 1978, 580 F.2d 716, 721. Similarly, it was proper for the district judge to rely on the waiver and consent form when engaging in a colloquy with Walker. *See Burroughs v. United States,* 5 Cir., 1975, 515 F.2d 824, 827.

We recently held in *Keel v. United States,* 5 Cir., 1978, 585 F.2d 110 (1978) that in order to qualify for § 2255 relief in a collateral attack on a guilty plea for failure of the district court to literally comply with Rule 11, the defendant must first show prejudice, *Id.* at 113–114. No prejudice has been shown here.

IV

Walker also contends that the United States violated the Interstate Agreement on Detainers, 18 U.S.C. App., pp. 1395–98 (1976 ed.) (IAD) by returning Walker from federal custody to his original place of imprisonment before disposing of all the outstanding charges against him.

The IAD "prescribes procedures by which a member State [including the federal government] may obtain for trial a prisoner incarcerated in another member jurisdiction . . . ". *See, generally, United States v.*

*States v. Adams,* 5 Cir., 1978, 566 F.2d 962, 967.

**5.** *United States v. Gearin,* 5 Cir., 1974, 496 F.2d 691, 694, *cert. denied,* 419 U.S. 1113, 95 S.Ct. 789, 42 L.Ed.2d 810 (1975) (defendant "not a

stranger to the courtroom"); *Dorrough v. United States, supra,* at 891, 893 (defendant "consciously participated" in conduct constituting offense, "not a stranger to the courtroom", and "intelligent and alert").

*Mauro,* 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978); 18 U.S.C. App., Art. IV, p. 1396. Article IV(e) of the IAD provides

> If trial is not had on any indictment, information, or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to article V(c), such indictment, information, or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

Walker was indicted for second degree murder on November 6, 1974. At that time he was in the custody of prison officials of the State of Georgia. By a writ of *habeas corpus ad prosequendum* [6] directed to these state prison officials, Walker was made to appear for arraignment in a Florida federal court on the second degree murder charge on December 12, 1974. Walker pled not guilty, a trial date was set, and, on January 3, 1975, Walker was returned to the custody of the State of Georgia.

On April 9, 1975, Walker reappeared in federal court in Florida and pled *nolo contendere* to an information, filed the same day, charging him with voluntary manslaughter. Walker was sentenced on April 24 on the voluntary manslaughter charge. The other pending charges, contained in the 1974 indictment, then were dismissed upon government motion.

The court below denied § 2255 relief with respect to Walker's IAD claim on the grounds that there is no allegation of constitutional significance because Walker was not prejudiced by the claimed "technical breach" and, second, that Walker's challenge, which was perceived as attacking only the "validity of incarceration", was inappropriately presented in a § 2255 motion.

The provisions of the IAD are triggered "only when a 'detainer' is filed with the custodial (sending) State by another State (receiving) having untried . . . ", *United States v. Mauro, supra,* at 343, 98 S.Ct.

at 1838. The writ of *habeas corpus ad prosequendum* is "not a detainer for purposes of the [IAD]", *Id.* at 361, 98 S.Ct. at 1847; *United States v. West,* 5 Cir., 1978, 568 F.2d 365, 368, *cert. denied,* 436 U.S. 958, 98 S.Ct. 3073, 57 L.Ed.2d 1123 (1978).

■ However, the IAD will apply and the federal government will be required to comply with its provisions when a *detainer initially is filed* with state prison officials but a writ of *habeas corpus ad prosequendum* is ultimately used to secure such prisoner's presence, *United States v. Mauro, supra,* at 361, 363, 98 S.Ct. 1834. There is no indication in the record that a detainer was, in fact, filed by the federal government with state prison officials. Walker, however, points to circumstances which "strongly [suggest] that federal authorities placed a detainer . . . ." Walker represents in his brief that he was imprisoned at the Georgia Colony Farm Correctional Institute, a "minimum medium security institution". He later was transferred to the Georgia State Prison at Reidsville, a "maximum security" institution. Transfers of this nature, Walker maintains, are common practice when detainers are lodged against prisoners. Walker thus urges this Court to remand this case to the District Court with directions to hold an evidentiary hearing to determine whether a detainer was filed.

The government, on the other hand, takes the position that even if the IAD did apply to the case *sub judice,* the issue of a violation of Article IV(e) is now moot because the Article IV(e) sanctions already have been imposed. The original charge was dismissed. The only federal charges pending against Walker at the time Article IV(e) allegedly was violated were those contained in the 1974 indictments.[7] Thus, assuming the applicability of the IAD, "trial [was] not had" on the 1974 indictments prior to Walker's return to state custody and consequently, under the authority of Article IV(e) "such indictment[s]—the 1974 indictments—shall not be of any further force or

---

**6.** The writ was issued on November 26, 1974, and executed on December 3, 1974.

**7.** *See* note 1, *supra.*

effect, and the court shall enter an order dismissing the same with prejudice". As stated, the record reflects that the 1974 indictments have been dismissed.

On the other hand, the sentence now under attack in this § 225 action stems from Walker's plea of *nolo contendere* to the voluntary manslaughter charge which was not filed until April 9, 1975, several months after the alleged Article IV(e) violation occurred.

If it should be determined in a hearing to ascertain the truth of the matter that a detainer was not filed (contrary to Walker's hunch that it was), then we need not consider the claimed IAD violation.

Accordingly, we enter a limited remand. We request the District Court to conduct a hearing to ascertain whether in fact a detainer as herein discussed was ever filed against this appellant, certifying its findings of fact to this Court.

On the Rule 11 issue the judgment of the District Court is AFFIRMED.

As to the detainer issue, there will be a limited remand as herein stated.