**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Winston Eugene DAYTON,
Defendant-Appellant.**

No. 78–5271.

United States Court of Appeals,
Fifth Circuit.

Oct. 18, 1979.

932

**934**

E. Lee Yeakel, III, Austin, Tex., for Winston Eugene Dayton.

LeRoy Morgan Jahn, Asst. U. S. Atty., San Antonio, Tex., for the United States.

Before BROWN, Chief Judge, COLEMAN, GOLDBERG, AINSWORTH, GODBOLD, CLARK, RONEY, GEE, TJOFLAT, HILL, FAY, RUBIN, VANCE, and KRAVITCH, Circuit Judges.*

GEE, Circuit Judge:

The records reaching us for review in appeals after guilty pleas indicate that trial courts of this circuit are in doubt about the standards we apply in reviewing such matters. We took this case en banc to pass on its merits, of course, but also as a vehicle by which to review and harmonize our holdings on the subject. This opinion, the result of that review, is meant to be a clear and definitive statement of how trial courts should conduct guilty plea hearings and how we review those proceedings. As for their conduct, the governing principle can be simply stated: full adherence to Rule 11, Fed.R.Crim.P. What is not so simple to state is what constitutes that "full adherence" and what we will do when it has not been accorded. This we shall attempt below.

### Guilty Pleas and Rule 11: A Little History

Guilty pleas are very important to the administration of criminal justice. It is common knowledge that most federal criminal prosecutions terminate in pleas of guilty or nolo contendere [1] and that, especially given the strictures of the Speedy Trial Act, the system could not function without them. Doubtless they have other desirable features as well: permitting the guilty defendant to recommence cooperation with society by a free acknowledgment of his fault, shortening the conviction process so that service of sentences may commence and end sooner, and the like.

■ That receiving such pleas is a process beset with pitfalls is also common knowledge, however. Of these, the two most dangerous have long been recognized: coerced pleas and ignorant ones. The first

---

* Judges Johnson, Garza, Henderson, Reavley, Politz, Hatchett, Anderson and Randall did not participate in the consideration of or decision in this case. The case was taken under submission by the court en banc on June 5, 1979.

1. In fiscal year 1978, over 85% of all federal convictions occurred on pleas of guilty or nolo contendere. 1978 Annual Report of the Director, Administrative Office of the United States Courts 114.

of these plainly is condemned by the Fifth Amendment's mandate that no one "be compelled in any criminal case to be a witness against himself." The second arises from the guilty plea as perhaps the supreme instance of waiver known to our system of justice, one by which all of its trial rights and safeguards are voluntarily foregone, and the defendant deliberately submits to conviction. If this is to be permitted, at the minimum a decent system of justice will concern itself that the admission is voluntary and the defendant knows what it is he is admitting, so that he does not mistakenly consent to be punished for a crime he did not commit. These are core considerations, requirements that manifestly must lie at the heart of any respectable system for settling (as opposed to trying) criminal charges.

This core is addressed in the original 1944 version of Rule 11, which reads in its entirety, so far as is pertinent here:

> The court may refuse to accept a plea of guilty, and shall not accept the plea without first determining that the plea is made voluntarily with understanding of the nature of the charge.[2]

It will be noted that this early version of the rule, like later ones, both states requirements for accepting the plea—that it be voluntary and informed—and provides means for ensuring that these are present. The latter are somewhat general and rudimentary, but they are real: discretion in the judge to reject the plea entirely and a duty on his part to "determine" that the rule's substantive requirements are satisfied before he accepts the plea.

And so matters rested with basic Rule 11 until 1966, when two important developments took place. The first of these occurred on July 1, when amendments significantly expanding the rule took effect. These added two substantive requirements and two procedural ones. The former were that defendant be made aware of what might happen as a result of his plea and that the court be satisfied that a factual basis existed for it.[3] The latter, again quite general but real, were that the court itself address the defendant and that it be satisfied[4] there was a factual basis for the plea. So expanded, the pertinent portions of the rule read as follows:

> The court may refuse to accept a plea of guilty, and shall not accept such a plea . . . without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea. . . . The court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea.

The second 1966 event important to the development of Rule 11 occurred on July 15 of that year, when a district court in Illinois accepted a guilty plea of William J. McCarthy to tax evasion without personally inquiring whether he understood the nature of the charge. Indeed, the transcript of their colloquy, reported in the court of appeals opinion, *United States v. McCarthy*, 387 F.2d 838, 839–40 (7th Cir. 1968), and in an appendix to that of the Supreme Court, *McCarthy v. United States*, 394 U.S. 459, 472–74, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969), makes very clear that the subject was not addressed at all in the course of the plea's acceptance. Despite this circumstance, the appeals court affirmed. The Supreme Court, however, granted certiorari and reversed.

The Court first noted the fact, conceded by the government, that at arraignment no

---

2. In this early form the rule did little more than state constitutional minima. *See Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

3. This change was doubtless effected to avoid such circumstances as are recounted in "The Long Black Veil."

4. Professor Wright notes that under the 1966 version of the rule this test "is a subjective one, is the court satisfied, rather than an objective test, is there a factual basis." Wright, *Federal Practice and Procedure: Criminal* (1969) § 1974, p. 376. The context of this comment indicates that the current version of the rule contemplates a test less clearly subjective, of which more later in the text of our opinion.

**936**

personal inquiry *whatever* was made about McCarthy's understanding of the nature of the charge. Next, it categorically rejected the government's contention that such a proceeding complied with Rule 11, going on to point out specific, "conceivable" ways (and one rather likely one) in which McCarthy may have misunderstood what it took to commit the crime with which he was charged. The crux of the opinion, for our present purposes, is to be found near its end, where the Court announced that *any* noncompliance with Rule 11 constitutes reversible error. In so concluding, the Court relied heavily on the need to conduct a thorough exploration and to produce a full record at the time of the arraignment so as to obviate the need for later, after-the-fact proceedings in this highly subjective area. Its crucial language is:

> We thus conclude that prejudice inheres in a failure to comply with Rule 11, for noncompliance deprives the defendant of the Rule's procedural safeguards that are designed to facilitate a more accurate determination of the voluntariness of his plea. Our holding that a defendant whose plea has been accepted in violation of Rule 11 should be afforded the opportunity to plead anew not only will insure that every accused is afforded those procedural safeguards, but also will help reduce the great waste of judicial resources required to process the frivolous attacks on guilty plea convictions that are encouraged, and are more difficult to dispose of, when the original record is inadequate. It is, therefore, not too much to require that, before sentencing defendants to years of imprisonment, district judges take the few minutes necessary to inform them of their rights and to determine whether they understand the action they are taking.

*McCarthy v. United States*, 394 U.S. 459, 471–72, 89 S.Ct. 1166, 1173–1174, 22 L.Ed.2d 418 (1969).

At the time of *McCarthy*, Rule 11 was still a relatively short and general pronouncement of little more than 100 words. Since then, however, the rule has undergone vast expansion and complication. As of its last amendment, fully effective December 1, 1975, it comprises over 1,000 words, grouped in 20 paragraphs and subparagraphs. For convenience, we set it out in the Appendix. The basic questions that we now address are when and whether a want of literal compliance with its current, more complex provisions activates the automatic reversal rule laid down in *McCarthy* for its simpler predecessor. We are somewhat aided in our task by the Court's recent, unanimous opinion in *United States v. Timmreck*, —— U.S. ——, ——, 99 S.Ct. 2085, 2087, 60 L.Ed.2d 634 (1979), where the Court, denying habeas relief for a mere technical violation[5] of Rule 11, noted in passing:

> His only claim is of a technical violation of the rule. That claim could have been raised on direct appeal, see *McCarthy v. United States*, 394 U.S. 459 [89 S.Ct. 1166, 22 L.Ed.2d 418], but was not. And there is no basis here for allowing collateral attack "to do service for an appeal." *Sunal v. Large*, 332 U.S. 174, 178 [67 S.Ct. 1588, 1590, 91 L.Ed. 1982].[6]

### An Analysis of the Current Rule

■ Like its predecessors, Rule 11 in its present form contains both substantive requirements and procedures to effectuate them. Substantively, the court must determine, before accepting the plea, the following:

(1) That the defendant understands the nature of the charge to which the plea is offered, any mandatory minimum penalty provided by law, and the maximum possible penalty provided by law.

---

**5.** The judge failed to advise Timmreck of a mandatory special parole term. We had reached the same conclusion as to harmless, technical errors in *Keel v. United States*, 585 F.2d 110 (5th Cir. 1978).

**6.** This statement is scarcely conclusive, however, being arguably dictum and somewhat ambiguous: to say that the matter could have been raised is not necessarily to say that raising it would have produced a reversal. The Court's "but was not," moreover, lends its remark a faint redolence of waiver.

(2) If the defendant is not represented by an attorney, that he understands he has the right to be represented by an attorney at every stage of the proceedings against him and that, if necessary, one will be appointed to represent him. Though the rule does not require it, we think careful practice will usually add, in appropriate circumstances, that the services of appointed counsel will be furnished without expense to the defendant.

(3) That he understands he has the right to plead not guilty or to persist in that plea if it has already been made, the right to be tried by a jury, with the right at that trial to have the assistance of counsel, the right to confront and cross-examine witnesses against him, and the right not to be compelled to incriminate himself.

(4) That if he pleads guilty or nolo contendere he understands there will not be a further trial of any kind, so that by pleading guilty or nolo contendere he waives the right to a trial.

(5) That if he pleads guilty or nolo contendere, he understands the court may ask him questions about the offense to which he has pleaded, and if he answers these questions under oath, on the record, and in the presence of counsel, his answers may later be used against him in a prosecution for perjury or false statement.

(6) That the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement, and whether the defendant's willingness to plead guilty or nolo contendere results from prior discussions between the attorney for the government and the defendant or his attorney.[7]

(7) That there is a factual basis for the plea.

We turn now from the present rule's substantive matter to the procedures specified by it to be followed by the court in making the substantive determinations required. These are:

A. As to the first six of the foregoing requirements, the court must personally address the defendant. Of this, we say more in paragraphs C and D below. This is not specified as to the seventh, though doubtless the court will usually wish to do so as to it as well.

B. About the first five of these, the court must "inform" the defendant. All of these five except the first one are relatively straightforward, and a simple statement of them by the judge will usually suffice.[8] The same is true of the penalty information called for by the first requirement.

We note that these five provisions replace the vague and open-ended "consequences of the plea" language of the 1966 version of the rule,[9] and, so noting, we conclude that they were meant to be both inclusive and exclusive. By this we mean that if the defendant is informed of these critical consequences, he need be informed of no others—such as possible consequent civil disenfranchisement or the like.[10] By the same token, however, we conclude that the judge *must* inform him of these and that an entire failure by the judge to do so will ordinarily require reversal. The rule plainly says he "must" do this, selecting these five critical consequences as the minimum essentials; and if the task it sets be slightly onerous, it is not difficult.

C. As for the first clause of the first requirement—that the judge personally inform the defendant of the nature of the charge and determine that he understands it—we are unable to state a simple

---

7. If so, further elaborate provisions of the rule become applicable. See its paragraph (e), incorporating six numbered subparagraphs.

8. As in the case of *Miranda* rights, another critical instance of waiver, which we judicially know usually are merely read to suspects from cards—often by police officers who, doubtless, do not always grasp their full scope and meaning but must read to them anyway.

9. *United States v. Adams*, 566 F.2d 962, 968–69 (5th Cir. 1978).

10. We have held in this connection that the defendant need not be informed at this stage of a mandatory special parole term. *United States v. Adams*, 566 F.2d 962, 969 (1978). *But see United States v. Timmreck, supra.*

or mechanical rule but offer some general observations that we hope will be helpful. For simple charges such as those in this case, a reading of the indictment, followed by an opportunity given the defendant to ask questions about it, will usually suffice. Charges of a more complex nature, incorporating esoteric terms or concepts unfamiliar to the lay mind, may require more explication. In the case of charges of extreme complexity, an explanation of the elements of the offense like that given the jury in its instructions may be required; this, of course, is the outer limit, for if an instruction informs a jury of the nature of the charge sufficiently for it to convict the defendant of it, surely it informs the defendant sufficiently for him to convict himself. We can do no more than commit these matters to the good judgment of the court, to its calculation of the relative difficulty of comprehension of the charges and of the defendant's sophistication and intelligence.[11]

Much the same is true of requirements six and seven that the plea be uncoerced and that the judge be satisfied it has a factual basis. Here again, no mechanical rules can be stated, and the more complex or doubtful the situation as to either requirement, the more searching will be the inquiry dictated by a sound judgment and discretion. Should the defendant, when addressed by the judge, give any serious indication that the plea is a result of force or threats or of promises apart from a plea agreement, the fifth amendment is immediately and directly implicated, and a most searching inquiry into these matters must follow. As for investigating the plea's factual basis, the present formulation of the rule lays down a test that is less clearly subjective than that of the 1966 rule.[12] All the same, it retains its clear reference to the trial judge's subjective satisfaction, and we conclude that this remains the test for that judge. We must review the exercise of that discretion, however, if an appeal is taken from it, and we must do so on the record of the Rule 11 proceeding. It is therefore incumbent upon the judge to produce a record on the basis of which we can determine that his discretion was not abused.

D. As for the rule's several injunctions that the judge personally address or inform the defendant of matters, we do not understand these to command a judicial monologue, though we approve this as the best practice. It will usually suffice, however, that the judge dominate the inquiry and involve himself personally in it on each of the first six heads (and desirably on the last) as to each charge and each defendant. We do not think the spirit or the letter of the rule require that the judge be sole orator or lector, especially where multiple charges and defendants are concerned. Judges, too, get sore throats.

E. Finally, a verbatim record of the proceedings must be made, both to preserve them against possible future assertions at variance with them and as a basis for prosecution of untruthful swearing, as well as in order that review of them may be had if desired. In its *McCarthy* opinion, the

---

11. If the court wishes to rely on the defendant's sophistication, however—as in the case, say, of a member of the bar—it would be advisable to get it on the record by questioning him.

12. Speaking of a proposed formulation of the 1966 version, Professor Wright noted:

There is a significant difference between the amendment as finally adopted and that proposed earlier by the Advisory Committee on Criminal Rules. The earlier proposal had said that the court was not to enter judgment upon a plea of guilty "without making such inquiry as may satisfy it that there is a factual basis for the plea." Under the rule as finally adopted the court need not make inquiry if there is other information available to it sufficient to satisfy it of the factual basis of the plea. In addition it is clearer under the amendment as adopted than it was under the earlier proposal that the test is a subjective one, is the court satisfied, rather than an objective test, is there a factual basis.

Wright, *Federal Practice and Procedure: Criminal* § 174, pp. 375–76 (footnotes omitted). It will be noted that the current rule is, if anything, even less subjective than the proposed version discussed by Professor Wright, being the same text except for the replacement of "may" by "shall."

Court laid great stress on the prophylactic value of such a record:

> [T]he Rule is intended to produce a complete record at the time the plea is entered of the factors relevant to this voluntariness [13] determination. . . .
>
> [T]he more meticulously the Rule is adhered to, the more it tends to discourage, or at least to enable more expeditious disposition of, the numerous and often frivolous post-conviction attacks on the constitutional validity of guilty pleas.

394 U.S. at 465, 89 S.Ct. at 1170. We see no reason why the changes in the rule since *McCarthy* should affect this pronouncement, and we therefore conclude that a failure to record Rule 11 proceedings completely and verbatim will ordinarily require reversal on appeal. Indeed, matters could scarcely be otherwise, since it will be a rare case and one that we cannot presently envision in which we look beyond the transcript of the arraignment in passing on an appeal after a guilty plea.

### Standards of Review

What we have said thus far represents our best effort to analyze the present Rule 11 and offer suggestions to trial courts and counsel about how it should be applied. We entertain no illusions that these will cure all ills; our modest hope is that they may constitute something in the nature of a checklist for the application of the rule, with a related practice commentary, for the use of the trial bench and bar. So used, they should reduce to a minimum meritorious appeals from guilty pleas. There remains, however, the question of what we should do when an appeal reveals a failure of compliance with the rule or an inadequate or erroneous one.

We conclude that a proper approach to review of such cases requires that we distinguish between *McCarthy*-type errors and others. As we have noted above, the Court held in *McCarthy* that "prejudice inheres" in failure to comply with Rule 11 in its form at the time of that opinion. It

happens, as we have also noted, that all the rule then treated were the values lying at the heart of the rule's concerns: absence of coercion, understanding of the accusation, and knowledge of the direct consequences of the plea. The Court was presented there with an entire failure to address the second of these basic pillars of the rule, and it held the omission fatal. We could not, even if we would, alter that holding. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), had gone before *McCarthy*, but the Court showed no disposition to apply its "harmless beyond a reasonable doubt" formula for review of constitutional error to that Rule 11 context. Nor, logically, can we see how an error inherently prejudicial can be viewed as harmless under any standard of review. Thus, we are bound to conclude, as we do, that such a failure by the trial court to address any one or more of the rule's three core concerns as occurred in *McCarthy* requires automatic reversal. There may, however, be room for the application of *Chapman's* rule to inadequate addresses of these matters or to unrelated constitutional errors arising from Rule 11 proceedings.

The next question is how we should view fallings off from the post-*McCarthy* elaborations of Rule 11. Should these meet automatic reversal as well? To do so would be to hold, as *McCarthy* did about the rule's central concerns, that no violation of any part of the rule can ever be harmless and to raise all of its requirements to a uniform level of sanctity higher than that accorded many constitutional rights, on a plane with the right to counsel, as one example. This seems to us an unwise course, wholly at variance with the need for finality of such pleas. The rule is now at such a level of complexity as to render letter-perfect compliance with each of its many provisions very difficult indeed. One who has pled guilty and done so voluntarily, understandingly, and with knowledge of the consequences of his plea—as the strict compliance with *McCarthy* that we today require

---

**13.** As the context makes clear, the Court intends by this term to embrace "voluntariness" in the senses of "informed" as well as that of "uncoerced."

ensures—has evinced a desire to waive technicalities, to come to terms with the legal system, and to admit his fault. There is something foreign to the spirit of this act, almost invariably done today on the advice of counsel, in a rule that encourages following it by an appeal grounded in a mincing insistance on the punctilios of Rule 11. As Mr. Justice Powell has observed in a somewhat related context:

> No effective judicial system can afford to concede the continuing theoretical possibility that there is error in every trial and that every incarceration is unfounded. At some point the law must convey to those in custody that a wrong has been committed, that consequent punishment has been imposed, that one should no longer look back with the view to resurrecting every imaginable basis for further litigation but rather should look forward to rehabilitation and to becoming a constructive citizen.

*Schneckloth v. Bustamonte,* 412 U.S. 218, 262, 93 S.Ct. 2041, 2065, 36 L.Ed.2d 854 (1973) (concurring opinion) (footnote omitted).

The Supreme Court itself has given at least one indication that it does not consider every violation of the rule so grave a matter as to render the plea proceeding fundamentally unfair. Not long after *McCarthy* came *Halliday v. United States,* 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16 (1969), in which the Court refused to apply retroactively its automatic reversal rule. In so doing, it carefully distinguished between involuntary pleas and those taken in technical noncompliance with Rule 11 in its then more simple form. 394 U.S. at 833, 89 S.Ct. 1498.

▮▮▮ An iron rule of review directed at technical and literal compliance by our brothers on the district bench with the post-*McCarthy* elaborations of Rule 11, some-

what in the spirit of the exclusionary rule's attempt to deter police misconduct, seems to us inappropriate. We have held that the rule must be fully and faithfully followed, and we do not doubt that the district courts of this circuit will make all efforts to follow our mandate. The question here is not whether such efforts should be made but how we should appraise them when they are. Nothing from above requires us to view fallings off from post-*McCarthy* additions to the rule as meriting automatic reversal, and we decline to do so. Where each of Rule 11's core inquiries has been reasonably implicated in the rule's required colloquy, we will examine its treatment to determine whether it has been sufficiently exposed to inquiry and determination. If so, we will not disturb the result. As for post-*McCarthy* additions to the rule—many, if not all, of which require determinations of fact that can scarcely be described as ultimate—nothing would prevent the trial court from making each the subject of a factfinding. Should it do so, we would review them in accordance with the clearly erroneous rule and that of harmless error, as in the case of any other finding by a trial judge sitting in a criminal case where a jury has been waived.[14] After all, what else but this is a Rule 11 proceeding? And why should a test thought adequate for review of findings in contested cases be deemed inadequate in uncontested ones? We see no reason in such an irrational distinction, and we refuse to draw it.

▮▮▮ Nor do we see reason in requiring formal, rote findings in Rule 11 matters. What the trial judge must find before accepting a guilty plea is clearly set out by the rule, and we have reiterated it above at [pp. 936–937]. The rule explicitly directs him not to accept a plea without determining these things. In reviewing such proceedings, therefore, we are warranted in

---

14. The matter of harmless error is treated in 52(a), Fed.R.Crim.P. That of factfindings by trial judges in criminal cases is the subject of 23(c) of those rules which, unlike its civil counterpart, does not enunciate a clearly erroneous standard for review of such findings. *See* 52(a), Fed.R.Civ.P., by slightly confusing coincidence bearing the same number as the criminal harmless-error rule. Even so, "there is general agreement that the 'clearly erroneous' test should be applied" to findings by judges in criminal proceedings where a jury has been waived. Wright, *supra,* § 374, p. 18.

regarding the court's acceptance of the plea as a positive finding on each, reviewable under the clearly erroneous standard. Hereafter we shall do so.

### Dayton's Case

Speaking en banc, we are freed of our self-imposed restriction that one panel of our court does not overrule another. We therefore reject and overrule such of our precedents as are at variance with what we hand down today. This requires affirmance of Dayton's conviction. Obedient to these existing precedents, a panel of our court reversed his conviction on a guilty plea. 592 F.2d 253. It did so in principal measure because of its deference to such opinions as *United States v. Lincecum*, 568 F.2d 1229 (5th Cir. 1978), in which a panel of our court laid down, ruling on a hearing pursuant to Rule 11, that "a single response, by the defendant that he 'understands' the charge gives no assurance or basis for believing that he does." *Id.* at 1231. *Lincecum*, in its own turn, was forecast by our earlier decision in *Sierra v. Government of Canal Zone*, 546 F.2d 77 (1977). This opinion also contains the same broad language: "Routine questions on the subject of understanding are insufficient, and a single response by the defendant that he 'understands' the charge gives no assurance or basis for believing he does." *Id.* at 79. Measured deliberation has convinced us that such statements are too broad.

Dayton's Rule 11 proceeding illustrates why we think so. As described in the panel opinion, it went as follows:

Dayton was simultaneously arraigned along with his eight codefendants. By a plea agreement, Dayton agreed to enter pleas of guilty to Counts 19 and 28 of a multiple count indictment and the Government agreed to dismiss the remaining counts. The two specific reasons Dayton offers for setting aside his plea are first, that he was not sufficiently informed of the nature of the charges

against him and second, that the trial judge did not satisfactorily determine whether there was a factual basis for a finding of his guilt on these two counts. Passing over, therefore, the other requirements of Rule 11, we recount only the arraignment exchanges touching upon these two assertions of Dayton.

Initially, the trial judge explained to Dayton that he would read the charges contained in Count 19 and he did so:

That on or about August 15, 1976, in the Western District of Texas, Defendants Louis Henry Krueger, John Morgan Flanagan, Bob David Jack, Winston Eugene Dayton, Donald Lewis Holeman and Arthur Stout did unlawfully, knowingly and intentionally possess with intent to distribute approximately six hundred pounds of marihuana, a Schedule I Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

The trial judge next told Dayton that, since he understood that Dayton was pleading guilty also to Count 28, he would read Count 28 and he did so:

That on or about December 7, 1976, in the Western District of Texas, Defendants Bob David Jack, Donald Lewis Holeman and Winston Eugene Dayton, did unlawfully, knowingly and intentionally possess with intent to distribute approximately one thousand pounds of marihuana, a Schedule I Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

Then, addressing Dayton, directly and personally, the trial judge inquired:

All right. Mr. Dayton, do you understand the nature of the charges that have been made against you in Counts 19 and 28?

MR. DAYTON: Yes, sir.

THE COURT: Mr. Dayton, any question about it?

MR. DAYTON: No, sir.[15]

---

**15.** This exchange was incorrectly set out in the panel opinion, 592 F.2d at 255. Although it appears as there set out in the original transcript, it was later corrected in a supplemental transcript to read as it appears here.

Further along during the proceedings, the trial judge undertook to ascertain whether there was any factual basis upon which the tendered pleas of guilty could be appropriately based. He did so by asking the Government's attorney to state the facts which the Government contended could be proven. Prior to the narration of the Government's attorney, the trial judge announced to the defendants, including Dayton:

Now, I want everyone here to listen to the facts upon which the Government relies to convict you as to each Defendant. Bear in mind you are under oath and I want to know if they can prove these facts against you beyond a reasonable doubt. All right.

The Government's attorney, responding to the trial judge's request, then delivered the following narration:

With regards to Count 19 of the indictment concerning Mr. Donald Lewis Holeman, Mr. Winston Eugene Dayton, Mr. Bob David Jack, it is alleged in the indictment that on or around August 15, the actual date was on or around September 5th to September 12th, 1976, Bob David Jack arranged for a load of marihuana to be smuggled into the United States from the Republic of Mexico.

A load of marihuana was subsequently smuggled by Thomas Kelly as the pilot. It landed at a ranch in the Western District of Texas in and around Llano, Texas, owned by Donald Lewis Holeman. It was flown in a plane owned by Donald Lewis Holeman and Defendant Louis Henry Krueger.

The defendant, Winston Eugene Dayton, acted as a ground crew, helped unload the marihuana and transported it from the airstrip. Defendants Holeman and Krueger received approximately ten thousand dollars on September 18th from John Morgan Flanagan and Arthur Stout at the *Tom Ball* Motor Company owned by Defendant Donald Lewis Holeman for their part in the transaction.

\* \* \* \* \* \*

With regards to Count 28 of the indictment, Your Honor, on Donald Lewis Holeman, Winston Eugene Dayton, on or about December 7, 1976, another load arranged by Bob David Jack wherein Defendant Winston Eugene Dayton acted as ground crew was flown from the Republic of Mexico into the United States by Thomas Kelly.

This load of marihuana also was flown into the Western District of Texas on an airstrip owned by Defendant Donald Lewis Holeman, for which he received consideration.

When the statement of facts upon which the Government relied for proof of guilt had been completed by the Government's attorney, the trial judge again addressed each of the defendants, including Dayton:

Now, each of you have heard the facts, that is the factual basis for which the Government relies to convict you as to the charges contained in each of the counts covered by the plea bargains or plea agreements.

Now, I will ask you, are these facts true and can they be proved against you beyond a reasonable doubt?

\* \* \* \* \* \*

Mr. Dayton?

DEFENDANT DAYTON: Yes, Your Honor.

Prior to these exchanges directly with Dayton, the trial judge had asked Dayton's counsel whether he had fully explained to his client the nature of the charges that had been made against his client and the consequences of a plea of guilty and Dayton's attorney had assured the trial judge that he had done so. The other requirements of an arraignment and the taking of a guilty plea were fulfilled and no question is raised concerning them.

592 F.2d at 254–256.

■ The charges to which Dayton pled are simple. We do not think that a sane adult, which no one disputes Dayton was,

needs to be told further what he is accused of after hearing it charged that on a specific date, at a place within the court's jurisdiction, he illegally possessed a specific amount of a named forbidden drug with intent to distribute it. Thus, the reading of *this* indictment, followed by an offer by the judge to answer any questions Dayton might have about it, was a satisfactory and sufficient explanation of the nature of this charge. His response that he understood and had no questions, even though it was the "single response" condemned in *Sierra, Lincecum* and the panel opinion, was likewise a sufficient assurance in these circumstances.

■ Likewise, the narration by the prosecutor, on the record, in the presence of the judge and the defendant, and at the specific request and direction of the judge, of what he meant to prove against Dayton—that on two specified occasions he acted as a ground crew member handling a load of flown-in marijuana—and Dayton's sworn response that he had done so and could be proven to have done so beyond a reasonable doubt established a factual basis for his plea that the judge could properly deem satisfactory.[16] His conviction must therefore be affirmed.

■ In closing, we reemphasize that such a colloquy will not pass muster in every case, and we endorse fully the general thrust of *Sierra* and *Lincecum* that a mere ritual does not suffice for compliance with Rule 11. What is necessary is that the trial court, given the nature of the charges and the character and capacities of the defendant, personally participate in the colloquy mandated by Rule 11 and satisfy himself fully that, within those limits, the defendant understands what he is admitting and what the consequences of that admission may be, as well as that what he is admitting constitutes the crime charged, and that his admission is voluntarily made. If the court does those things, and .if the record of that hearing shows a common-sense basis for agreeing that he did so, we will not disturb its actions.

AFFIRMED.

## APPENDIX

Rule 11. Pleas

(a) Alternatives. A defendant may plead not guilty, guilty, or nolo contendere. If a defendant refuses to plead or if a defendant corporation fails to appear, the court shall enter a plea of not guilty.

(b) Nolo contendere. A defendant may plead nolo contendere only with the consent of the court. Such a plea shall be accepted by the court only after due consideration of the views of the parties and the interest of the public in the effective administration of justice.

(c) Advice to defendant. Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform him of, and determine that he understands, the following:

(1) the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law; and

(2) if the defendant is not represented by an attorney, that he has the right to be represented by an attorney at every stage of the proceeding against him and, if necessary, one will be appointed to represent him; and

(3) that he has the right to plead not guilty or to persist in that plea if it has already been made, and that he has the right to be tried by a jury and at that trial has the right to the assistance of counsel, the right to confront and cross-examine witnesses against him, and the right not to be compelled to incriminate himself; and

(4) that if he pleads guilty or nolo contendere there will not be a further trial

---

16. As we observed at note 4, the standard here is a subjective one, but see our discussion at p. 938.

of any kind, so that by pleading guilty or nolo contendere he waives the right to a trial; and

(5) that if he pleads guilty or nolo contendere, the court may ask him questions about the offense to which he has pleaded, and if he answers these questions under oath, on the record, and in the presence of counsel, his answers may later be used against him in a prosecution for perjury or false statement.

(d) Insuring that the plea is voluntary. The court shall not accept a plea of guilty or nolo contendere without first, by addressing the defendant personally in open court, determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement. The court shall also inquire as to whether the defendant's willingness to plead guilty or nolo contendere results from prior discussions between the attorney for the government and the defendant or his attorney.

(e) Plea agreement procedure.

(1) *In general.* The attorney for the government and the attorney for the defendant or the defendant when acting pro se may engage in discussions with a view toward reaching an agreement that, upon the entering of a plea of guilty or nolo contendere to a charged offense or to a lesser or related offense, the attorney for the government will do any of the following:

(A) move for dismissal of other charges; or

(B) make a recommendation, or agree not to oppose the defendant's request, for a particular sentence, with the understanding that such recommendation or request shall not be binding upon the court; or

(C) agree that a specific sentence is the appropriate disposition of the case.

The court shall not participate in any such discussions.

(2) *Notice of such agreement.* If a plea agreement has been reached by the parties, the court shall, on the record, require the disclosure of the agreement in open court or, on a showing of good cause, in camera, at the time the plea is offered. Thereupon the court may accept or reject the agreement, or may defer its decision as to the acceptance or rejection until there has been an opportunity to consider the presentence report.

(3) *Acceptance of a plea agreement.* If the court accepts the plea agreement, the court shall inform the defendant that it will embody in the judgment and sentence the disposition provided for in the plea agreement.

(4) *Rejection of a plea agreement.* If the court rejects the plea agreement, the court shall, on the record, inform the parties of this fact, advise the defendant personally in open court or, on a showing of good cause, in camera, that the court is not bound by the plea agreement, afford the defendant the opportunity to then withdraw his plea, and advise the defendant that if he persists in his guilty plea or plea of nolo contendere the disposition of the case may be less favorable to the defendant than that contemplated by the plea agreement.

(5) *Time of plea agreement procedure.* Except for good cause shown, notification to the court of the existence of a plea agreement shall be given at the arraignment or at such other time, prior to trial, as may be fixed by the court.

(6) *Inadmissibility of pleas, offers of pleas, and related statements.* Except as otherwise provided in this paragraph, evidence of a plea of guilty, later withdrawn, or a plea of nolo contendere, or of an offer to plead guilty or nolo contendere to the crime charged or any other crime, or of statements made in connection with, and relevant to, any of the foregoing pleas or offers, is not admissible in any civil or criminal proceeding against the person who made the plea or offer. However, evidence of a statement made in connection with, and relevant to, a plea of guilty, later withdrawn, a plea of nolo contendere, or an offer to plead guilty or nolo contendere to the crime charged or any other crime, is admissible in a criminal proceeding for perjury or

false statement if the statement was made by the defendant under oath, on the record, and in the presence of counsel.

(f) Determining accuracy of plea. Notwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea.

(g) Record of proceedings. A verbatim record of the proceedings at which the defendant enters a plea shall be made and, if there is a plea of guilty or nolo contendere, the record shall include, without limitation, the court's advice to the defendant, the inquiry into the voluntariness of the plea including any plea agreement, and the inquiry into the accuracy of a guilty plea.

JOHN R. BROWN, Chief Judge, concurring:

I agree with the Court that the failure of a Trial Court to comply to-the-letter with Rule 11 does not automatically entitle a defendant to have his plea vacated. However, I am troubled by *how* the majority reaches its decision. More importantly, I am troubled by the tenor of the opinion. I would strongly emphasize that in the vast majority of cases, the failure to comply with Rule 11 should not be considered harmless. Only technical or insubstantial deviations from Rule 11 should be tolerated.

The Court, in reaching its holding, relies heavily on the fact that Rule 11 was amended *after* the Supreme Court's decision in *McCarthy*. Like the dissent, I find the Court's breakdown into old and new components of the Rule unpersuasive and believe that *McCarthy* applies to *all* provisions of new Rule 11.[1] See Note, Pleading Guilty: Illinois Supreme Court Rule 402 and the New Federal Rule of Criminal Procedure 11, 1975 U.Ill.L.Forum 116, 121 ("although the issue in *McCarthy* was the interpretation of old Rule 11, the decision is nevertheless an important indication of the proper construction of new Rule 11 because the basic policies and objectives are the same.").

However, unlike the dissent, I believe that *McCarthy* provides enough flexibility to allow for a rule of reason. The dissent suggests that a guilty plea can be automatically vacated if a Trial Court makes even the most technical error in applying Rule 11. In arriving at this position, the dissent relies on a passage in *McCarthy* stating that "prejudice inheres in a failure to comply with Rule 11." Yet *McCarthy* also indicates that "[m]atters of reality, and not mere ritual, should be controlling." 394 U.S. at 467 n.20, 89 S.Ct. at 1171, quoting *Kennedy v. United States*, 6 Cir., 1968, 397 F.2d 16, 17.[2] Moreover, in *McCarthy* the departures

1. Apart from subdivision (e) of Rule 11, which involves plea bargaining negotiations and is not relevant here, new Rule 11 is essentially an *elaboration* and *clarification* of old Rule 11. For example, whereas old Rule 11 simply required the Trial Judge to find that the plea was made with an "understanding of the nature of the charge and the consequences of the plea," new Rule 11 "identifies *more specifically* what must be explained to the defendant . . . ." Advisory Committee Notes to the 1974 Amendment to Rule 11, 18 U.S.C.A. F.R.Crim.P. 11 (1975) (emphasis added). Thus, under the new Rule, the defendant must be informed of specific constitutional rights that are waived by a guilty (or nolo contendere) plea. Rule 11(c)(3), (4). The Congressional Conference Committee emphasized that subdivision (c) of the new Rule "enumerates certain things that a judge *must* tell a defendant before the judge can accept that *defendant's* plea." House Conf. Rep. No. 94–414, 94th Cong., 1st Sess. 9 (1975) (emphasis added). Congress, in considering amendments to old Rule 11, specifically reject-

ed a version of Rule 11(c)(3) proposed by the Advisory Committee on Rules of Criminal Procedure which provided that the court "*may* want to explain some of the aspects of the trial such as the right to confront witnesses, to subpoena witnesses, to testify in his own behalf, or, if he chooses, not to testify." (Emphasis added.) Consequently, all signals by Congress suggest that the teachings of *McCarthy* are fully applicable to the various clarifications and elaborations of the new Rule. I can find absolutely nothing to support the Court's view that two standards of review should apply to new Rule 11, one for "basic pillars," the other for "fallings off from the post-*McCarthy* elaboration of Rule 11."

2. As one commentator observed:

Though [a] flexible approach [to Rule 11] weakens the absolute (prophylactic) effect of the presumed prejudice standard, it remains faithful to the *McCarthy* analysis. In an important caveat, the *McCarthy* Court empha-

from Rule 11 were so clearly prejudicial that the Court had no reason to consider the possible application of harmless error.[3]

A couple of examples will indicate why "matters of reality" demand that a harmless error approach be read into Rule 11. Suppose a defendant initially elects to have a jury trial. Midway during the trial, defendant decides to plead guilty. Rule 11(c)(3) provides that the Court must instruct defendant of his right to a trial by jury. Obviously defendant already knows this and a Trial Court, in an effort to make Rule 11 something other than a ritual, may choose not to mention this. Under the dissent's view, the defendant's plea would have to be vacated. Similarly, Rule 11(c)(3) requires the Court to instruct defendant that at trial he "has the right to assistance of counsel." If the Court has already appointed a lawyer for defendant, defendant could not have been prejudiced by the Court's failure to give this instruction. See Santa Clara Comment, *supra*, at 693–97 (giving examples of "technical" departures from Rule 11).

On the other hand, while I believe that some flexibility under Rule 11 is necessary, I think the Court carries things too far. The majority holds that post-*McCarthy* elements of the Rule should be subject to

clearly erroneous *and* harmless error tests "as in the case of any other finding by a trial judge sitting in a criminal case where a jury has been waived." Op. at 940. This language signals excessive tolerance for deviations from Rule 11. The Court fails to recognize the unique posture of Rule 11, as interpreted by *McCarthy*. If *McCarthy* means anything, it means that Rule 11 is different from other rules governing trial court conduct. And since Judges should have the Rule in front of them when conducting guilty plea proceedings, most errors are inexcusable. Finally, at the direct appeal stage, the costs on the judicial system of vacating a guilty plea are simply not that enormous.[4]

I would therefore eliminate all references to the clearly erroneous standard. Since so much of the Rule is constitutionally based, see, e. g., *Boykin v. Alabama*, 1969, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274, I would leave no doubt that the only proper standard is the harmless error standard applicable to constitutional infringements, i. e., harmless beyond a reasonable doubt, see *Chapman v. California*, 1967, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705, and on occasion substantial, although technically not satisfied, compliance. I would emphasize, moreover, that Trial Courts should rarely under-

---

sized that matters of reality, not mere ritual, were to control in the review of plea proceedings. Flexible review gives reasonable effect to this precaution without defeating the purpose of the strict review standard.
Comment, Appellate Review of Guilty Plea Acceptances in Federal Court: Harmless Error in a Rule 11 Proceeding? 1978, 18 Santa Clara L.Rev. 687, 707 (hereinafter cited as Santa Clara Comment).

3. The dissent contends that the Fifth Circuit is the only Circuit that refuses to require literal compliance (although an accompanying footnote recants slightly). With deference, this is not strictly correct. It is true that no Circuit has taken as far-reaching an approach as the majority and, indeed, in 1976, the Second Circuit explicitly rejected a harmless error approach in *United States v. Journet*, 2 Cir., 1976, 544 F.2d 633. Yet there are numerous cases from a variety of Circuits (including post-1976 cases from the Second Circuit) in which technical deviations from the letter of Rule 11 have been held not to warrant vacating the plea. See, e. g., *United States v. Hamilton*, 9 Cir.,

1978, 568 F.2d 1302, 1306 (Trial Court's reliance on prosecutor to inform defendant of possible penalties under plea; in affirming the conviction, Court emphasized that "Rule 11 [should] not become the vehicle to transform plea hearings into ritualistic performances"); *United States v. Saft*, 2 Cir., 1977, 558 F.2d 1073, 1080 (failure to advise of right to counsel in situation where defendant had already been assigned a lawyer; Court emphasized that matters of reality should govern); *United States v. Michaelson*, 2 Cir., 1977, 552 F.2d 472, 477 (failure to advise of privilege against self-incrimination; Court observed that a "minimum of flexibility" must be read into the Rule). Whether the phrase "harmless error" is used to describe the rationale of these cases is merely a question of semantics.

4. Of course, the costs are much greater at the collateral review stage, and this Circuit rightfully requires the defendant to demonstrate actual prejudice at that stage. See *Keel v. United States*, 5 Cir., 1978, 585 F.2d 110 (en banc).

take to depart from the literal wording of Rule 11, and would underscore that many deviations from Rule 11 could never be harmless beyond a reasonable doubt.[5] I would reserve use of harmless error for situations in which the failure to comply with Rule 11 is merely a technical departure from the Rule or in which there has been substantial compliance with the demands of Rule 11.

While the various opinions in this case appear to be completely at odds with one another, there is one important point upon which the entire Court agrees. A number of our decisions have gone beyond the wording of Rule 11 in imposing requirements on Trial Judges conducting guilty plea proceedings. We now overrule these cases. In my view, the disposition in the instant case is governed by our decision to overrule these prior cases. The errors alleged by Dayton were not failures to comply with the wording of Rule 11, but were failures to comply with certain of our cases adding a gloss to the Rule. Since we now overrule these cases, Dayton's conviction must be affirmed.

CLARK and RUBIN, Circuit Judges, with whom GOLDBERG and GODBOLD, Circuit Judges, join, dissenting:

## I.

In two respects our views are not contrary to the majority:

### a.

In making inquiry to satisfy himself that there was a fact basis for Dayton's plea, the trial judge asked the Assistant United States Attorney to state the facts upon which the government would rely to convict. The attorney recited that at some time between September 5 and 12, 1976, a plane load of marihuana was flown from Mexico to a ranch owned by a co-defendant, Holeman. Dayton's only connection with this September venture was stated: he "acted as a ground crew, helped unload the marihuana and transported it from the airstrip." The attorney further stated that another plane load of marihuana was flown in to Holeman's ranch from Mexico on December 7, 1976. Dayton's sole involvement in this episode was stated: he "acted as ground crew." When the court asked if these facts were true and could be proved beyond a reasonable doubt, Dayton answered: "Yes, your Honor."

Whether these facts and all reasonable inferences therefrom establish a factual basis for Dayton's plea of unlawfully, knowingly, and intentionally possessing with intent to distribute each of the two plane loads of marihuana does not present an enbancworthy issue. Indeed, it seems doubtful that the panel would have reversed under present circuit law if they had discovered the transcript correction which disclosed that the judge had determined Dayton understood the nature of the charge. However, the affirmance of Dayton's conviction merely furnished the occasion for the majority's departure, and the purpose of this dissent is not to differ with the outcome of Dayton's appeal, but to record our opposition to our brothers' change of direction.

### b.

To the extent our prior holdings have on a *per se* basis either prescribed or proscribed recitations and responses in the guilty plea dialogue that were neither mandated nor forbidden by the words of Rule 11, we agree that our precedents sweep more broadly than *McCarthy* requires and that those precedents should now be rejected. Such shadings of broad terminology are interstices we are expected to fill. Where Rule 11 has created no specific per se standard, an ad hoc approach to each case is preferable.

## II.

Respectfully, however, we disagree with the majority's decision that Rule 11 does

---

5. The majority uses tough language when discussing the "basic pillars" of the Rule. However, the section dealing with "fallings off from the post-*McCarthy* elaborations of Rule 11" (whatever these might be) is much too casual in its treatment of deviations from Rule 11.

not mandate literal compliance with its requirements on the basis of their interpretation of the effect of the amendments to that rule. As they concede, *McCarthy* holds that "*any* noncompliance with Rule 11 constitutes reversible error." Yet, they conclude that, after the same Supreme Court and the Congress acted to make Rule 11's procedures more precise—an amendment obviously made with *McCarthy* in mind as the controlling precedent—the mandate of *McCarthy* somehow was weakened. Reasoning ipse dixit, the majority states "[n]othing from above requires us to view fallings off from post-*McCarthy* additions to the rule as meriting automatic reversal."

*McCarthy* states categorically, "prejudice inheres in a failure to comply with Rule 11, for noncompliance deprives the defendant of the Rule's procedural safeguards that are designed to facilitate a more accurate determination of the voluntariness of the plea." Most recently, in *Timmreck*, the Supreme Court reasoned that a collateral attack on a guilty plea could not be maintained on the basis of a technical violation of Rule 11 because *McCarthy* allows such technicalities to be raised on direct appeal. The majority says this language is "arguably dictum and somewhat ambiguous." We cannot read it so.[1] To us, *Timmreck* clearly stands for the proposition that *McCarthy* continues to command what it mandated on the day it was decided: strait compliance with all procedures demanded by Rule 11. Its prophylaxis must be used full strength to be effective.

Today's retreat from exacting full compliance with Rule 11 seems to be based upon a reluctance to impose on fellow judges requirements the majority regards as ritualistic. We respectfully submit that such a reluctance will prove to be counter-productive. Faithful adherence to the requirements of Rule 11 creates a record that, in the long run, maps the shortest way home not just for appellate courts but for trial courts too. It permits appellate courts to ascertain that defendants who entered guilty pleas did so advisedly and district judges to know what they must and must not do in the plea procedure. The question is not whether we like Rule 11 or would have written it in its present form had the pen been ours. The job of this court is to enforce it as it is written in the light of the Supreme Court's clear mandate that precise compliance is required.

Alone among the circuits that have considered the question,[2] this court now refuses to require literal compliance with Rule 11. Professor Moore was, therefore, profoundly mistaken when he observed:

> The question of failure to comply with Rule 11 requirements would not appear academic since the rule not only requires the court to determine that the plea is understood and voluntary, but it further recites the exact ritual to be observed and makes compliance mandatory.

R. 11, Moore's Federal Practice, ¶ 11.03[1], pp. 11–64.

---

1. The majority detects "a faint redolence of waiver" in the Supreme Court's language. Whether or not this be true is beside the mark.

2. *See United States v. Cammisano*, 8 Cir. 1979, 599 F.2d 851, 855; *United States v. Fels*, 7 Cir. 1979, 599 F.2d 142, 149 & fn. 5; *United States v. Journet*, 2 Cir. 1976, 544 F.2d 633, 634; *United States v. Boone*, 4 Cir. 1976, 543 F.2d 1090, 1092; *United States v. O'Donnell*, 9 Cir. 1976, 539 F.2d 1233, *cert. denied*, 429 U.S. 960, 97 S.Ct. 386, 50 L.Ed.2d 328. *But see United States v. Dawkins*, E.D.Pa.1978, 448 F.Supp. 1343, *aff'd* 3 Cir., without published opinion, 577 F.2d 729 (deeming a failure to inform defendant of his right to cross-examine witnesses "insignificant"). One might wonder whether the Second Circuit's devotion to literal compliance is unwavering. *See United States v. Saft*,

2 Cir. 1977, 558 F.2d 1073, 1080, and *United States v. Michaelson*, 2 Cir. 1977, 552 F.2d 472, 477, in which the Second Circuit, although expressly refusing to overrule *Journet*, rejected challenges to guilty pleas based on Rule 11. In each case the court explained its decision as being consistent with *Journet* on the basis of local practice, which made the 11(c)(5) warnings unnecessary, and of the peculiar facts of the cases, which made it clear that the rights not explicitly mentioned by the court were understood by the defendant to be included in his right to a jury trial. *Compare* Judge Wisdom's comment in *United States v. Adams*, 5 Cir. 1978, 566 F.2d 962, 964 n.2, interpreting these cases as authorizing "certain slight deviations from strict compliance with Rule 11."

Our circuit has considered a number of appeals of guilty pleas in which the claim of failure to comply with Rule 11 was made.[3] Yet the statistical facts demonstrate that our past requirements of exact compliance with Rule 11 have produced no burden on the administration of justice. According to the 1978 Annual Report of the Director of the Administrative Office of the United States Courts, the cases of 11,743 criminal defendants were terminated in the Fifth Circuit during the 12 months ending June 30, 1978. (Table D–1). Applying the national rate of convictions, 79.5%, and the ratio of guilty pleas, 85.23%, (Table D–4) to these terminations indicates that more than 7,900 guilty pleas must have been taken in this circuit during the past one-year period alone. Fewer than a dozen of these guilty plea proceedings have been set aside under *McCarthy's* stricture[4] and in only one of them would that result have been altered by the adoption of the standard today announced.[5]

With today's new layering of Rule 11 into "*pre-McCarthy*" and "*post-McCarthy*" requirements, the court is plunged into a record-by-record, sentence-by-sentence analysis of every appeal following a guilty plea. The substitution of this procedure is neither fair to the defendant who was supposed to receive the recorded protection of Rule 11's more precise provisos nor is it good judicial administration. Given the lights we have, we respectfully dissent from the portions of the majority's opinion in which it concludes that substantial compliance with Rule 11 is enough.[6]

### III.

We remain not only bound, but convinced, by *McCarthy's* reasoning:

Our holding that a defendant whose plea has been accepted in violation of Rule 11 should be afforded the opportunity to plead anew not only will insure that every accused is afforded those procedural safeguards, but also will help reduce the great waste of judicial resources required to process the frivolous attacks on guilty plea convictions that are encouraged, and are more difficult to dispose of when the original record is inadequate.

The en banc majority now impresses a harmless error analysis on future Rule 11

**3.** *See, e. g., United States v. Benavides*, 5 Cir. 1979, 596 F.2d 137; *United States v. Sanderson*, 5 Cir. 1979, 595 F.2d 1021; *United States v. Cobos*, 5 Cir. 1979, 590 F.2d 1338; *United States v. Kahn*, 5 Cir. 1979, 588 F.2d 964; *United States v. Taylor*, 5 Cir. 1978, 583 F.2d 178; *United States v. Broussard*, 5 Cir. 1978, 582 F.2d 10.

**4.** There are ten reported decisions, but some involve consolidated cases. *See United States v. Benavides*, 5 Cir. 1979, 596 F.2d 137; *United States v. Cobos*, 5 Cir. 1979, 590 F.2d 1338; *United States v. Kahn*, 5 Cir. 1979, 588 F.2d 964; *United States v. Boatright*, 5 Cir. 1979, 588 F.2d 471; *United States v. Gray*, 5 Cir. 1978, 584 F.2d 96; *United States v. Clark*, 5 Cir. 1978, 574 F.2d 1357; *United States v. Lincecum*, 5 Cir. 1978, 568 F.2d 1229; *United States v. Adams*, 5 Cir. 1978, 566 F.2d 962; *United States v. Hart*, 5 Cir. 1978, 566 F.2d 977; *Government of Canal Zone v. Tobar T.*, 5 Cir. 1978, 565 F.2d 1321. Subsequent developments reduced even further the number of cases that reached trial. Two of the defendants whose pleas were set aside promptly pleaded guilty again after the case was remanded. After remand three other indictments were dismissed by government motion.

**5.** *See United States v. Hart*, 5 Cir. 1978, 566 F.2d 977. To the extent that the majority's opinion not only establishes a new standard for reviewing violations of post-amendment additions to Rule 11, but also rewrites the judicial gloss placed on pre-amendment Rule 11 by such cases as *Sierra v. Government of Canal Zone*, 5 Cir. 1977, 546 F.2d 77, the impact of the opinion on our prior decisions would be greater.

**6.** For example, the rule requires that *the court* address the defendant personally in open session and inform him, and determine that he understands each of the matters enumerated in subparagraphs (1)–(5) of paragraph (c). It also specifies that *the court* address the defendant personally in open court and determine that the plea is voluntary as provided in paragraph (d). The rule is similarly exact in its paragraph (e) requirement that inquiry must be made by *the court* as to plea discussions, and in paragraph (f) that inquiry by *the court* must satisfy itself that there is a factual basis for the plea. We would continue to read *McCarthy's* gloss on Rule 11 to require the court do each (not some or most) of these things itself, not by proxy— sore throat or no.

cases in this circuit. Such an approach to constitutional or non-constitutional failure to comply with Rule 11 is diametrically contrary to *McCarthy's* holding that "prejudice inheres in a failure to comply with Rule 11." It is not meet for an inferior court to overrule Supreme Court precedent, and we disavow any part in this venture.