# BRIAN DALE PRIET v. STATE OF MARYLAND

[No. 469, September Term, 1979.]

*Decided February 13, 1980.*

The cause was submitted on briefs to GILBERT, C. J., and THOMPSON and MOYLAN, JJ.

Submitted by *Alan H. Murrell, Public Defender,* and *Patricia A. Logan, Assistant Public Defender,* for appellant.

Submitted by *Stephen H. Sachs, Attorney General, Paul T. Cuzmanes, Assistant Attorney General, Sandra A. O'Connor, State's Attorney for Baltimore County,* and *C. William Clark, Assistant State's Attorney for Baltimore County,* for appellee.

THOMPSON, J., delivered the opinion of the Court. MOYLAN, J., filed a concurring opinion at page 6 *infra.*

Brian Dale Priet, the appellant, was convicted on a guilty plea in the Circuit Court for Baltimore County, of robbery with a deadly weapon. He was sentenced to a term of ten years. Appellant contends that:

    1. the trial court erred by improperly accepting his guilty plea;

2. the trial court erred by not dismissing his case because he was not brought to trial within 120 days; and

3. he did not receive competent representation by his trial counsel.

At about 2:30 a.m. on Sunday, August 27, 1978, two men entered a Seven-Eleven store in Baltimore County. When the men approached the cashier, one of them produced a bayonet and the other scooped the cash out of the open cash register. The two then fled and the police were called. Twenty minutes later, the police stopped two men answering the description of the robbers. From them they recovered the money taken from the store as well as the bayonet. One of the men was the appellant and the other George Fields. At the trial the appellant agreed to the facts given by the state except to maintain that the person holding the bayonet was Fields.

The appellant initially contends that the court failed to comply with Md. Rule 731 c because the judge did not explain on the record the charges to which he pled guilty. The rule provides in pertinent part:

"The court may not accept a plea of guilty without first questioning the defendant on the record to determine that the plea is made voluntarily, with understanding of the nature of the charge and the consequences of the plea. . . ."

The following colloquy took place between the judge and the appellant:

"The Court: Have you discussed your guilty plea fully with your attorney?

The Defendant: Yes, sir.

The Court: Have you discussed all of the relevant facts and possible defenses about this case with Mr. Brennan?

The Defendant: Yes, sir."

Although we have not quoted the complete colloquy, the

record shows no discussion with the appellant as to the nature of the charge.

In the recent case of *Countess v. State,* 286 Md. 444, 408 A.2d 1302 (1979), the Court of Appeals interpreted Rule 735, which directs the procedures to be followed when a defendant waives a jury trial and elects a court trial. The court stated:

> "The inquiry upon which the court determines that the defendant has made his election for a court trial with full knowledge of his right to a jury trial and has knowingly and voluntarily waived the right, must be 'of the defendant on the record.' It is clear that the inquiry required for the determination must be addressed to the defendant in open court and recorded. The inquiry need not be conducted by the judge; it may be made by defense counsel or even by the prosecutor, but the responses must come from the defendant himself. *The Rule does not envision that counsel simply report to the court that he has inquired of the defendant and given him the information necessary for an effective election.* In order to assess properly the validity of an election under Rule 735 the court must not only know what was told the defendant but be in a position to evaluate the responses of the defendant to the information imparted. The information given, the questions asked of the defendant and by the defendant and the answers and comments made must be on the record so as to be available for appellate review if the election is questioned." *Id.* at 454. (emphasis added).

The Court recognized that this procedure "goes far beyond what is necessary for a waiver of a jury trial to be constitutionally effective; the Supreme Court has certainly not enunciated such a test." We believe that the recent interpretation of the Rules in *Countess* requires reversal here, because the judge did not inquire on the record of the defendant whether he understood the charges to which he pled guilty. There is no reason to require a less strict rule

when the issue is the acceptance of a guilty plea than when the issue is the waiver of a jury trial. More constitutional rights are waived by a guilty plea than just the right to a jury trial. A defendant who pleads guilty waives his right to any trial as well as several other constitutional rights. In addition, the pertinent portion of Md. Rule 735 d is similar to the pertinent portion of Md. Rule 731 c:

"If the defendant elects to be tried by the court, the trial of the case on its merits before the court may not proceed until the court determines, after inquiry of the defendant on the record, that the defendant has made his election for a court trial with full knowledge of his right to a jury trial and that he has knowingly and voluntarily waived the right. . . ."

This reasoning is supported by cases interpreting Rule 11 c of the Federal Rules of Criminal Procedure 18 U.S.C. App. (1976) which is similar to Md. Rule 735. This Rule provides:

"Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform him of, and determine that he understands, the following:

"(1) the nature of the charge to which the plea is offered, . . ."

In *McCarthy v. United States,* 394 U.S. 459, 89 S. Ct. 1166, 22 L. Ed. 2d 418 (1969), the trial judge did not determine that the plea was made "voluntarily with the understanding of the nature of the charges." The Supreme Court reversed, holding that the trial court failed to comply with the procedural dictates of the rule. The Court stated that the purpose of Rule 11 was first, to assist the trial judge in making a constitutionally required determination that a defendant's guilty plea was truly voluntary, and secondly, to produce a complete record at the time the plea was entered, of the factors relevant to the voluntariness determination. Thus, post conviction attacks on the constitutional validity of guilty pleas would be discouraged. Federal cases interpreting

*McCarthy* and Federal Rule 11 c have stated that the trial judge must personally determine whether the defendant understands the nature of the charges. *See, e.g., United States v. Wetterlin,* 583 F.2d 346 (7th Cir. 1978), *cert. denied,* 439 U.S. 1127, 99 S. Ct. 1044 (1979); *Horsley v. United States,* 583 F.2d 670 (3rd Cir. 1978); *United States v. Adams,* 566 F.2d 962 (5th Cir. 1978); *United States v. Saft,* 558 F.2d 1073 (2d Cir. 1977); *Phillips v. United States,* 519 F.2d 483 (6th Cir. 1975). *See also, United States v. Bambulas,* 571 F.2d 525 (10th Cir. 1978); *United States v. Coronado,* 554 F.2d 166 (5th Cir.), *cert. denied,* 434 U.S. 870, 98 S. Ct. 214 (1977), *American Bar Association Project on Minimum Standards for Criminal Justice — Standards Relating to Pleas of Guilty* § 1.4 (approved draft 1968).

We note that the due process constitutional standards relating to voluntariness of a guilty plea set forth in *Boykin v. Alabama,* 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969); *Henderson v. Morgan,* 426 U.S. 637, 96 S. Ct. 2253, 49 L. Ed. 2d 108 (1976), and interpreted by Maryland Courts in *Davis v. State,* 278 Md. 103, 361 A.2d 113 (1976) and *Miller v. State,* 32 Md. App. 482, 361 A.2d 152, *cert. denied,* 278 Md. 728 (1976), *cert. denied,* 430 U.S. 966 (1977) would probably be satisfied by the proceedings below, however, under *Countess v. State, supra,* we are constrained to hold that the trial judge did not comply with Rule 731 c of the Rules of Procedure in the present case.

Although we are reversing the case, we are remanding it for a new trial and thus we need to discuss briefly one other question raised by the appellant. The appellant contends that the court erred in not dismissing the charges against him because he was not tried within the period required by Maryland Rule 746 a which states:

> "Within 30 days after the earlier of the appearance of counsel or the first appearance of the defendant before the court pursuant to Rule 723 (Appearance — Provision for or Waiver of Counsel), a trial date shall be set which shall be not later than 120 days after the appearance or waiver of counsel or

after the appearance of defendant before the court pursuant to Rule 723."

We note that the docket entries indicate the appellant's trial counsel entered his appearance on October 10, 1978; that the trial was postponed at the appellant's request on November 30, 1978; and that he was tried on January 9, 1979. This was 91 days after his trial counsel entered his appearance, and thus the trial was in compliance with the rule.

> *Judgment reversed.*
> *Case remanded for a new trial.*
> *Costs not reallocated pursuant to Maryland Rule 1082 f.*

*Moylan, J., concurring:*

Reluctantly, I concur. I cannot fault the logic of the majority opinion as it proceeds to its conclusion from the premise of *Countess v. State,* 286 Md. 444, 408 A.2d 1302 (1979). I do question, however, the wisdom of that premise.

I agree with the majority that the approach to Md. Rule 735 mandated by *Countess v. State* cannot be reconciled with the approach to Md. Rule 731 c mandated by *Davis v. State,* 278 Md. 103, 361 A.2d 113 (1976). For my part, I far prefer the more sensible approach of *Davis v. State,* so well articulated there by Judge Digges.

What we have done here (or rather what the rule has done under the *Countess* approach to rule interpretation) is to exalt form over substance. In this case, it is clear to any rational beholder that the appellant voluntarily entered a plea of guilty. That should end the inquiry. To send this case back for a retrial mocks the business of judicial review. It is one further illustration of why the public perceives the judicial system as frequently operating in an ivory tower. At a time when resources are finite and caseloads are staggering, sound policy calls for concentrating the limited judicial, prosecutorial and defense resources that are

available upon issues of real substance rather than upon the abracadabra of reciting a litany. We are fiddling while Rome burns.