# STATE OF MARYLAND v. BRIAN DALE PRIET, ROBERT WAYNE PINCUS AND GARY VANDIVER

[No. 17, September Term, 1980.]

*Decided January 14, 1981.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*Stephen Rosenbaum, Assistant Attorney General,* with whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellant.

*Patricia A. Logan, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellees.

MURPHY, C. J., delivered the opinion of the Court.

The sole issue in these consolidated criminal cases is whether guilty pleas were accepted in violation of that part of Maryland Rule 731 c which requires questioning of the

defendant on the record to determine that the plea is voluntarily entered, "with understanding of the nature of the charge." Maryland Rule 731 c provides:

"The court may not accept a plea of guilty without first questioning the defendant on the record to determine that the plea is made voluntarily, with understanding of the nature of the charge and the consequences of the plea. The court may accept the plea of guilty even though the defendant does not admit that he is in fact guilty if the court is satisfied that there is a factual basis for the plea. . . ."

In each case, convictions entered upon guilty pleas were reversed by the Court of Special Appeals on the ground that the requisite inquiry contemplated by the rule to determine whether the defendant understood "the nature of the charge" to which he pled guilty was not made. In so concluding, the Court of Special Appeals placed reliance upon our decision in *Countess v. State,* 286 Md. 444, 408 A.2d 1302 (1979), a case mandating reversal of a conviction for failure to comply with the requirements governing the waiver of the right to trial by jury, as prescribed by Maryland Rule 735 d.[1] We granted certiorari to consider whether the intermediate appellate court properly interpreted and applied the provisions of Rule 731 c in reversing the convictions in these cases.

I

## The Priet Case

After waiving the reading of the multi-count indictment, Priet, through his counsel, pleaded guilty in the Circuit

---

1. Rule 735 d provides:

"If the defendant elects to be tried by the court, the trial of the case on its merits before the court may not proceed until the court determines, after inquiry of the defendant on the record, that the defendant has made his election for a court trial with full knowledge of his right to a jury trial and that he has knowingly and voluntarily waived the right. If the court determines otherwise, it shall give the defendant another election pursuant to this Rule."

Court for Baltimore County to robbery with a dangerous and deadly weapon. Before accepting the plea, the trial judge (Hormes, J.) questioned Priet at length. He ascertained from Priet's personal responses to his questions that the defendant was nineteen years old and had a ninth grade education; that he was not then under the influence of alcohol, drugs, or any medication; and that he had been in a mental institution for evaluation on two recent occasions. The trial judge said to Priet: "Now, you are asking us to enter a guilty plea to the charge of robbery with a dangerous and deadly weapon, are you not?" Priet replied, "Yes, sir." The trial judge then told Priet that upon conviction for the offense, a sentence of twenty years could be imposed. Priet said he understood. Judge Hormes advised Priet in detail of the various constitutional and statutory rights that he would be waiving if his guilty plea were accepted. Priet said he understood. Judge Hormes then told Priet that if his guilty plea were accepted, there would be no trial but that a "statement" would be read into the record. Again Priet said he understood. Judge Hormes asked Priet whether his plea was "voluntary," of his "own free will and without any conditions" and entered because he was "in fact guilty." Priet responded affirmatively to each of these questions. The trial judge next asked Priet whether, except for the plea agreement, any promises or inducements had been made to him in return for his guilty plea and whether he had been threatened, intimidated, or forced into pleading guilty. Priet responded in the negative. In response to further questions from the court, Priet acknowledged that he had discussed his guilty plea with his attorney, as well as the relevant facts of the case and possible defenses to the crime. At this point in the dialogue, Judge Hormes said that he was satisfied that the plea was voluntary. The prosecutor then read an agreed statement of facts to the court. It disclosed that Priet and a companion had entered a 7-11 Store and, at the point of a fourteen-inch bayonet, and in the presence of store employees, had taken money from the store's cash register, together with a traveler's check and a cigarette coupon. The statement indicated that Priet was subsequently appre-

hended with the fruits of the crime in his possession, and that eyewitnesses would identify Priet as one of the robbers. The court thereafter entered a verdict of guilty, and sentenced Priet to ten years' imprisonment.

In reversing Priet's conviction, the Court of Special Appeals said that the record "shows no discussion with the appellant as to the nature of the charge," as required by Rule 731 c. *Priet v. State,* 45 Md. App. 1, 3, 410 A.2d 1107 (1980). It pointed out that in *Countess v. State, supra,* we said that Rule 735 required that the inquiry whether the defendant had waived a jury trial must be on the record; that the inquiry must be personally addressed to the defendant and his responses recorded; that it was not sufficient that counsel simply report to the court that he advised the defendant of the information necessary for an effective election; and that the court must know what is told the defendant to be able to evaluate his responses to the information imparted. The court held that our reversal in *Countess* for violation of Rule 735 required, by analogy, that Priet's conviction be reversed for violation of Rule 731 c "because the judge did not inquire on the record of the defendant whether he understood the charges to which he pled guilty." 45 Md. App. at 3. Noting a similarity of language between Rule 731 c and 735 d, the Court of Special Appeals said:

> "There is no reason to require a less strict rule when the issue is the acceptance of a guilty plea than when the issue is the waiver of a jury trial. More constitutional rights are waived by a guilty plea than just the right to a jury trial. A defendant who pleads guilty waives his right to any trial as well as several other constitutional rights." 45 Md. App. at 3-4.

The court explained that its reversal of Priet's conviction for non-compliance with Rule 731 c was supported by cases interpreting similar language in Rule 11 of the Federal

Rules of Criminal Procedure,[2] citing primarily *McCarthy v. United States,* 394 U.S. 459, 89 S. Ct. 1166, 22 L. Ed. 2d 418 (1969), for the proposition that under the federal rule "the trial judge must personally determine whether the defendant understands the nature of the charges." 45 Md. App. at 5.

## The Pincus Case

After the first degree murder indictment was read to Pincus, his counsel, as a result of plea negotiations with the State, entered a plea of guilty in the Criminal Court of Baltimore to second degree murder. Before accepting the plea, the trial judge (Karwacki, J.) extensively questioned Pincus. He ascertained from Pincus' personal responses to his questions that the defendant was nineteen years old, had a seventh grade education, and had spent a year in a mental institution. Judge Karwacki asked Pincus whether he understood that he had entered a plea of guilty "to a charge that you murdered one Robert Alverson on September 30, 1979, here in Baltimore." Pincus said he understood and in response to further questions from the court he said that he had participated in the murder. The court thereafter advised Pincus with considerable specificity concerning constitutional and other rights that he would be waiving by pleading guilty. Pincus said he understood. The court then directed the prosecutor to read the plea agreement aloud and asked Pincus to "listen carefully." After the agreement was read, Pincus said that he understood that under its terms he would be subject to imprisonment for up to fifteen years, and also understood that it was for the judge to make the

---

**2.** Rule 11 then provided in part:

"A defendant may plead not guilty, guilty or, with the consent of the court, *nolo contendere.* The court may refuse to accept a plea of guilty, and shall not accept such plea or a plea of *nolo contendere* without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea. . . ."

determination as to sentence. Judge Karwacki then elicited further responses from Pincus, showing that the plea was free and voluntary and was not entered as a result of any threats. The prosecutor then asked Pincus whether in answering "Yes" to the court's questions he understood what the trial judge "was talking about or did you answer 'Yes' for any other reasons?" Pincus replied, "Basically because I understood all the questions." The prosecutor then asked Pincus whether he understood the difference between first and second degree murder. Pincus replied that he did and that he had taken the difference in punishment into consideration in pleading guilty to second degree murder. At the court's request, the factual basis for Pincus' plea was thereafter read into the record. It disclosed that the victim and Pincus were neighbors in an apartment house; that Pincus became annoyed with the victim's banging on his door, trying to sell him things; that Pincus let the victim enter and then stabbed him repeatedly with a knife, after which the victim died. The court concluded that there was a factual basis for the plea and that it was entered freely and voluntarily, with full knowledge of its consequences. The court thereupon accepted the plea to second degree murder.

Relying upon *Priet* and *Countess,* the Court of Special Appeals, in an unreported opinion, reversed Pincus' conviction for failure to comply with Rule 731 c, stating that "there is nothing on the record to show that the trial judge inquired of the defendant whether he understood 'the nature of the charge' to which he pled guilty." *Pincus v. State,* No. 813, September Term, 1979 (Court of Special Appeals, filed February 29, 1980).

### The Vandiver Case

Vandiver entered an *Alford*-type [3] guilty plea in the Criminal Court of Baltimore to the charge of robbery. Before the

---

3. North Carolina v. Alford, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970), holds that it does not offend due process requirements to permit an accused to plead guilty to an offense without acknowledging commission of the acts constituting the offense.

plea was accepted by the court (Howard, J.), Vandiver's counsel questioned him extensively, ascertaining from Vandiver's responses that he was eighteen years old, had a seventh grade education, was not then under the influence of narcotics or alcohol, and had never been a patient in a mental institution. Vandiver acknowledged in response to counsel's question that he had discussed "the elements of robbery" with him and understood "what the offense of robbery consist, what burden the State would have to prove" to obtain a conviction for robbery. He said he understood that robbery was punishable by ten years' imprisonment and that by pleading guilty, he would be giving up a number of constitutional rights, which his counsel enumerated. Vandiver acknowledged that he had not been threatened or promised anything to plead guilty, except for the plea agreement reached with the prosecution. At the conclusion of this dialogue, the court said that the plea was voluntary, and a statement of stipulated facts was then read into the record. It showed that Vandiver and a companion accosted the victim near her house, threw her to the ground, and took her purse containing a number of valuable items. As a result of descriptions given of the robbers, Vandiver was apprehended and the stolen items were found in his possession. He was identified by the victim and an eyewitness to the robbery as one of the robbers.

The Court of Special Appeals, in an unreported opinion, concluded that Rule 731 c had been violated because there was no showing on the record that Vandiver understood the nature of the offense to which he pled guilty. It reversed Vandiver's conviction, citing *Priet* and *Countess* as authority. *Vandiver v. State,* No. 743, September Term, 1979 (Court of Special Appeals, filed February 22, 1980).

## II

In determining whether there was compliance with Rule 731 c in these cases, it is important to review the state of the Maryland law prior to July 1, 1977, the date upon which the

rule became effective. Consistent with the requirements of due process, the decisions of this Court have always required that a guilty plea, to be valid, must be entered voluntarily and intelligently. *Hudson v. State,* 286 Md. 569, 409 A.2d 692 (1979); *Davis v. State,* 278 Md. 103, 361 A.2d 113 (1976); *Lowe v. State,* 111 Md. 1, 73 A. 637 (1909). The fundamental rule outlined in our cases is that "a plea of guilty may be entered under circumstances showing a voluntary desire on the part of the accused to do so, with an intelligent understanding of the nature of the offense to which he is pleading guilty and the possible consequences of such a plea." *See, e.g., James v. State,* 242 Md. 424, 428, 219 A.2d 17 (1966). It was the law of this State, prior to the adoption of Rule 731 c, that no "specific ritual" was required to be followed by the trial judge "in order to satisfy himself of the voluntary character of the plea and of the fact that the defendant understands the nature and effect of a plea of guilty." *Id.* at 428. In *Owens v. State,* 243 Md. 719, 222 A.2d 838 (1966), the Court said that it was the duty of the trial judge to ascertain that the guilty-pleading defendant is aware of the nature of the charges and the consequences of a guilty plea. In discharging this duty, the trial judge is not required, we said, "ritualistically and personally [to] advise the accused of these matters," it being sufficient if the defendant is "made aware of the consequences of his guilty plea regardless of the source whence the information comes." *Id.* at 721.

*Davis v. State, supra,* decided in 1976 (a year prior to the effective date of Rule 731 c), addressed the question "of what information the due process clause of the Fourteenth Amendment of the United States Constitution requires state trial courts to obtain from defendants who plead guilty to criminal charges in order to ensure that the record reflects that they do so voluntarily and intelligently." 278 Md. at 104. In that case Judge Digges, for the Court, carefully analyzed the cases bearing on the issue and in particular focused upon whether *Boykin v. Alabama,* 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969), required that trial judges,

before accepting a guilty plea, must specifically inform the accused on the record that by pleading guilty he was waiving his constitutional rights against compulsory incrimination, to have a jury trial, and to confront his accusers. We concluded that *Boykin* did not, as a matter of due process, require trial judges to enumerate and obtain a specific on-the-record waiver of these constitutional rights "or go through any particular litany, before accepting a defendant's guilty plea." *Id.* at 114. We said that *Boykin* required only that the record disclose that the plea was entered voluntarily and understandingly in order to accord with due process requirements. We noted that *North Carolina v. Alford,* 400 U.S. 25, 31, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970), decided after *Boykin,* stated that "The standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." In determining whether there was compliance with this standard, we observed that courts usually looked to the "totality of the circumstances as reflected in the entire record." 278 Md. at 109. We held that Davis' guilty plea, considered on the record taken as a whole, was voluntary and intelligent and therefore was in conformity with the requisite constitutional standard. We concluded our opinion with this statement:

"Beyond the constitutional minimum inquiry, however, we encourage trial judges to engage those persons seeking to enter guilty pleas in a dialogue as detailed as time, resources and circumstances permit. Such an on-the-record colloquy should insure beyond cavil that the plea is properly entered, and thus insulate it from successful direct or collateral attack. For suggested approaches, *see, e.g., Call v. McKenzie,* W. Va., 220 S.E.2d 665, 670-71 (1975); *Fed. R. Crim. P.* 11; ABA Project on Standards for Criminal Justice, The Function of the Trial Judge § 4.2 (Tent. Draft, June 1972); Bishop, *Guilty Pleas in Wisconsin,* 58 Marq. L. Rev. 631,

654-58 (1975); Bishop, *Waivers in Pleas of Guilty,* 60 F.R.D. 513, 532-38 (1974)." *Id.* at 118.

Rule 731 c, adopted against the background of these cases, plainly comports with the constitutional requirement that guilty pleas must be voluntarily and intelligently entered. The Attorney General argues on behalf of the State that the rule represents nothing more than a codification of the existing law of due process as applied to the voluntariness of a guilty plea. Nothing in the rule, he suggests, requires the trial judge to go through any particular litany before accepting a tendered guilty plea. The Attorney General maintains that the requirements for the waiver of a jury trial, as specifically delineated in Rule 735, and applied by us in *Countess,* are wholly unrelated to the procedure mandated by Rule 731 c for the taking of guilty pleas. The State points out that the requirements of Rule 735 governing the waiver of a jury trial are contained in the verbiage of the rule itself and required thereby to be expressly imparted to the defendant to afford him a basic understanding of the nature of a jury trial. Those advisements, as summarized in *Countess, supra,* 286 Md. at 455, require that the defendant be told "that he has the right to be tried by a jury of 12 persons or by the court without a jury; that whether trial is by a jury or by the court, his guilt must be found to be beyond a reasonable doubt; that in a jury trial all 12 jurors must agree that he is so guilty but in a court trial the judge may so find." The Court of Special Appeals erred in each of these cases, it is argued, when it equated the strict requirements of Rule 735 for a knowing and voluntary waiver of a jury trial with the requirement of Rule 731 c that a guilty-pleading defendant be advised of the "nature of the charge" against him. We are urged to conclude that a case-by-case analysis of the totality of the circumstances, rather than a ritualistic recital of the technical elements of the crime, should determine whether, in compliance with Rule 731 c, the defendant was advised of and understood the nature of the charge to which he pleaded guilty.

The appellees argue that in view of our language in *Davis* we intended in adopting Rule 731 c to go beyond the constitutional due process standard. They argue that the requirements of Rule 731 c must be interpreted in light of both the Supreme Court due process cases involving guilty pleas and the federal cases interpreting Fed. Rule Crim. Proc. 11, after which Rule 731 c was patterned. It is urged that Rule 731 c requires the same strict construction as Rule 735 was given in *Countess;* hence, as in the waiver of a jury trial under Rule 735, which requires a basic understanding of the nature of a jury trial, so too does Rule 731 c require a "basic understanding" of the nature of the charge before a guilty plea can properly be accepted. The appellees acknowledge that Rule 731 c does not require the trial judge to recite the technical, legal elements of the crime; it does require, they urge, that the trial judge use "whatever language is most effective in the circumstances (considering the defendant's age, education, level of intelligence) to establish the defendant's understanding of the nature of the offense." Appellees contend that a simple explanation of the substance of the charge would suffice to establish an accused's understanding of the offense, but they claim that this was not done in the cases before us. The appellees rely primarily upon *McCarthy v. United States,* 394 U.S. 459, 89 S. Ct. 1166, 22 L. Ed. 2d 418 (1969), and *Henderson v. Morgan,* 426 U.S. 637, 96 S. Ct. 2253, 49 L. Ed. 2d 108 (1976), both of which we discussed in *Davis.*

The *McCarthy* case involved the requirements for acceptance of a guilty plea under Federal Rule 11 (*see* note 2, *supra*). In that case, it was conceded that the trial judge did not inform the defendant, as required by the rule, of "the nature of the charge" to which he pled guilty. The Supreme Court, interpreting Rule 11, held that failure to fully adhere to the procedure prescribed by the rule required reversal to permit the defendant to "plead anew" to the charge. *Id.* at 463-64. The Court observed that Rule 11 expressly directs the trial judge to determine, among other things, whether the defendant "understands the nature of the charge against him."

The Court said that the procedure embodied in the rule was designed to assist the district judge in making the constitutionally required determination that the defendant's guilty plea is truly voluntary and, additionally, to produce a complete record at the time the plea is entered of the factors relevant to the voluntariness determination. The Court said that because a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary "unless the defendant possesses an understanding of the law in relation to the facts." *Id.* at 466. Accordingly, the Court noted that Rule 11 required the district judge to satisfy himself that there was a factual basis for the plea since he had to determine that the conduct which the defendant admitted constituted the offense charged against him to which he had pled guilty.[4] This requirement of Rule 11, involving "the relation between the law and the acts the defendant admits having committed is designed to 'protect a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge.'" *Id.* at 467. The Court recognized that the nature of the inquiry under Rule 11 would "necessarily vary from case to case," and it declined to "establish any general guidelines other than those expressed in the Rule itself." *Id.* at 467 (note 20).

In *Henderson v. Morgan, supra,* the defendant, described as "retarded" and of substantially below average intelligence, entered the home of a woman at night, intending to collect wages she owed to him; when she awoke and began screaming, the defendant stabbed her to death. He was charged with first-degree murder, *i.e.,* that he "wilfully" murdered the victim, and the indictment was read to him in open court. He pleaded guilty to second-degree murder, *i.e.,* a killing committed with a design to effect death, but without deliberation and premeditation. This charge was never formally made against the defendant and

---

4. Rule 11 and our Rule 731 c specifically require that a factual basis for the guilty plea be shown as a prerequisite to their validity.

he was never advised by his counsel or the court that an intent to cause death was an essential element of the offense. The defendant later claimed that his guilty plea was not voluntarily and intelligently entered because he would not have pleaded guilty had he known that an intent to cause the death of the victim was an element of the offense of second-degree murder. The question before the Supreme Court was "whether a defendant may enter a voluntary plea of guilty to a charge of second-degree murder without being informed that intent to cause the death of his victim was an element of the offense." *Id.* at 638.

The Court noted at the outset that the defendant's lawyer thought manslaughter was the proper charge because the defendant did not intend to kill the victim when he entered her house with a knife. Nevertheless, prior to entry of the defendant's guilty plea, there was, the Court observed, "no discussion of the elements of the offense of second-degree murder, no indication that the nature of the offense had ever been discussed with respondent, and no reference of any kind to the requirement of intent to cause the death of the victim." *Id.* at 642-43. The Court considered the government's argument that the voluntariness of the defendant's guilty plea should not be determined by requiring "a ritualistic litany of the formal legal elements" of the offense, but rather by "the totality of the circumstances" to determine "whether the substance of the charge, as opposed to its technical elements, was conveyed to the accused." *Id.* at 644. The Court said:

> *We do not disagree with the thrust of petitioner's argument,* but we are persuaded that even under the test which he espouses, this judgment finding respondent guilty of second-degree murder was defective." *Id.* (Emphasis supplied).

The Court said that "the [defendant's] plea could not be voluntary in the sense that it constituted an intelligent admission that he committed the offense unless the defen-

dant received 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process,'" citing *Smith v. O'Grady,* 312 U.S. 329, 61 S. Ct. 572, 85 L. Ed. 859 (1941). *Id.* at 645. As to this, the Court explained that "[w]ithout adequate notice of the nature of the charge . . . or proof that [the defendant] in fact understood the charge," the plea could not constitute an intelligent admission of guilt. *Id.* The Court observed that because a jury could have found the defendant guilty only of manslaughter, a mere admission that the defendant killed the victim did not amount to guilt of second-degree murder. The Court concluded:

> "There is nothing in this record that can serve as a substitute for either a finding after trial, or a voluntary admission, that respondent had the requisite intent. Defense counsel did not purport to stipulate to that fact; they did not explain to him that his plea would be an admission of that fact; and he made no factual statement or admission necessarily implying that he had such intent. In these circumstances it is impossible to conclude that his plea to the unexplained charge of second-degree murder was voluntary.
>
> "Petitioner argues that affirmance of the Court of Appeals will invite countless collateral attacks on judgments entered on pleas of guilty, since frequently the record will not contain a complete enumeration of the elements of the offense to which an accused person pleads guilty. We think petitioner's fears are exaggerated.
>
> "Normally the record contains either an explanation of the charge by the trial judge, or at least a representation by defense counsel that the nature of the offense has been explained to the accused. Moreover, even without such an express representation, it may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give

the accused notice of what he is being asked to admit. This case is unique because the trial judge found as a fact that the element of intent was not explained to respondent. Moreover, respondent's unusually low mental capacity provides a reasonable explanation for counsel's oversight; it also forecloses the conclusion that the error was harmless beyond a reasonable doubt, for it lends at least a modicum of credibility to defense counsel's appraisal of the homicide as a manslaughter rather than a murder." *Id.* at 646-47 (footnote omitted).

In a footnote (*id.* at 647, note 18), the Court remarked: "There is no need in this case to decide whether notice of the true nature, or substance, of a charge always requires a description of every element of the offense; *we assume it does not.*" (Emphasis supplied.)

The requirement of Maryland Rule 731 c that the court "not accept a plea of guilty without first questioning the defendant on the record to determine that the plea is made voluntarily, with understanding of the nature of the charge ..." is similar to that contained in rules governing the acceptance of guilty pleas in other state jurisdictions and in federal prosecutions under Federal Rule 11. It also closely parallels the verbiage of Standard 1.4 of the American Bar Association Standards Relating to Pleas of Guilty (Approved Draft, 1968), the commentary to which recognizes that no specific litany is required in the taking of a guilty plea; that the procedure will necessarily vary from case to case, ranging from a simple reading of the indictment in some cases, to an explanation of the charge " 'in simple everyday language' " in more complex cases; and that "[t]he responsibility of the judge varies, depending upon such circumstances as the complexity and comprehensibility of the indictment and the defendant's intelligence, education, age, and experience." [5] Revised ABA Standard 14.-1.4 (2d ed.

---

5. In pertinent part, Standard 1.4 reads:

"The court should not accept a plea of guilty . . . from a defendant without first addressing the defendant personally and

1980), enlarges upon the advice to be given to a guilty-pleading defendant to include, not only an explanation of the "nature of the charge," as required in Standard 1.4 of the 1968 Approved Draft, but also the "elements" of the offense to which the plea is being entered. The commentary to the revised Standard acknowledges that it goes beyond the constitutional requirements for the acceptance of a guilty plea; that none of the authorities cited in the commentary in support of the revised Standard require that the defendant be advised of the elements of the offense; and that in *Henderson v. Morgan, supra,* the Supreme Court "stopped short" of holding that a trial court must explain the elements of all offenses to which defendants plead guilty.

A number of state supreme courts, interpreting the reach of *Henderson,* have held that that case does not mandate a recitation of the technical legal elements of the offense as a precondition to the valid acceptance of a guilty plea in all cases. The Supreme Court of Rhode Island in *State v. Williams,* R.I., 404 A.2d 814 (1979), interpreting a rule similar to Maryland Rule 731 c, concluded from the language of *Henderson* that it was the substance of the charge, rather than its technical legal elements, which had to be conveyed to the guilty-pleading defendant. It said that *Henderson* "requires only that at the conclusion of the plea hearing, the trial justice should be able to say with assurance that the accused is fully aware of the nature of the charge and the consequences of the plea." *Id.* at 819. In so holding, the court agreed with the interpretation placed on *Henderson* by the Supreme Judicial Court of Massachusetts in *Com. v. McGuirk,* Mass., 380 N.E.2d 662 (1978), *cert. denied,* 439 U.S. 1120 (1979), where that court, in interpreting a rule similar to our Rule 731 c, said:

"As we read *Henderson,* the plea was involuntary not simply because the record of the guilty plea hearing contained no explanation of the elements of

---

(a) determining that he understands the nature of the charge; . . . ."

murder in the second degree, but also because there was nothing that could 'serve as a substitute for . . . a voluntary admission . . . that [defendant] had the requisite intent. Defense counsel did not purport to stipulate to that fact; they did not explain to him that his plea would be an admission of that fact; and he made no factual statement or admission necessarily implying that he had such intent.' *Henderson v. Morgan, supra,* 426 U.S. at 646, 96 S. Ct. at 2258. The opinion, in our view, thus indicates that the deficiency in the *Henderson* case can be cured in at least one of three ways: (1) an explanation of the essential elements by the judge at the guilty plea hearing; (2) a representation that counsel has explained to the defendant the elements he admits by his plea; (3) defendant's statements admitting to facts constituting the unexplained element or stipulations to such facts." *Id.* at 666.

The Supreme Court of California in *In re Ronald E.,* 19 Cal. 3d 315, 562 P.2d 684, 137 Cal. Rptr. 781 (1977), pointing to the language in *Henderson* which assumed that a description of the "elements" of the offense is not required as a condition to a valid guilty plea, held that a rule requiring a defendant to be advised only as to the nature of the charge is satisfied if the accused knowingly admits to a course of conduct constituting the offense charged; and the record demonstrates that the accused had fair notice of what he was being asked to admit.

Other state cases, some decided before and some after *Henderson,* have declined to hold that a recitation of the legal elements of the offense is an essential prerequisite to the valid acceptance of a guilty plea under rules requiring that a guilty-pleading defendant be advised of the "nature" of the charge or offense. These cases have eschewed the need either for any specific litany or a recitation of the technical legal elements of the offense, adopting instead a more flexible approach of determining, on

the record as a whole, whether the defendant had an understanding of the essence of the offense. *See, e.g., Morgan v. State,* 582 P.2d 1017 (Alas. 1978); *State v. Ellis,* 117 Ariz. 329, 572 P.2d 791 (1977); *People v. Krantz,* 58 Ill. 2d 187, 317 N.E.2d 559 (1974); *In re Guilty Plea Cases,* 395 Mich. 96, 235 N.W.2d 132 (1975), *cert. denied,* 429 U.S. 1108 (1977); *Moore v. State,* 496 S.W.2d 810 (Mo. 1973). One state court, without mentioning *Henderson,* has concluded that where the rule itself requires that the accused be advised of the "elements" of the offense, rather than merely its "nature," the critical elements of the crime must be explained in terms understandable to the accused. *See People v. Gorniak,* 197 Colo. 289, 593 P.2d 349 (1979). In a similar vein, *Commonwealth v. Ingram,* 455 Pa. 198, 316 A.2d 77 (1974), a pre-*Henderson* case, held that for an examination of the accused to demonstrate that he understands the nature of the charge against him, the record must disclose that the elements of the crime were explained to him in understandable terms. *State v. Fluhr,* 287 N.W.2d 857 (Iowa 1980), a post-*Henderson* case, holds that the state rule requiring that the accused be advised of the nature of the offense is satisfied only if the specific intent element of the offense is explained to the accused but that a recitation of all elements of the offense is not required.

Federal cases interpreting Rule 11 recognize that information imparted to the defendant as to the nature of the offense will necessarily vary from case to case, depending upon the peculiar facts of each situation, considering both the complexity of the charges and the personal characteristics of the defendant, such as his age, education, intelligence, alacrity of his responses, and whether he was represented by counsel. *See, e.g., United States v. Kriz,* 586 F.2d 1178 (8th Cir. 1978), *cert. denied,* 442 U.S. 945, 99 S. Ct. 2893, 61 L. Ed. 2d 317 (1979); *United States v. Wetterlein,* 583 F.2d 346 (7th Cir. 1978), *cert. denied,* 439 U.S. 1127, 99 S. Ct. 1044, 59 L. Ed. 2d 1229; *Sierra v. Government of Canal Zone,* 546 F.2d 77 (5th Cir. 1977); *Stinson v. Turner,* 473 F.2d 913 (10th Cir. 1973). These cases suggest that Federal Rule 11

does not require an explanation of the formal elements of the offense to convey an understanding of the nature of the charge.

In two more recent decisions, the United States Court of Appeals for the Fifth and Seventh Circuits analyzed Federal Rule 11 to determine what constitutes informing the defendant of "the nature of the charge to which the plea is offered." *United States v. Gray,* 611 F.2d 194 (7th Cir. 1979), *cert. denied,* 446 U.S. 911, 100 S. Ct. 1840, 64 L. Ed. 2d 264 (1980); *United States v. Dayton,* 604 F.2d 931 (5th Cir. 1979), *cert. denied,* 445 U.S. 904, 100 S. Ct. 1080, 63 L. Ed. 2d 320 (1980). In *Gray,* the court said:

> "Initially, we reject a construction of 11(c)(1) which literally requires that the judge personally address the defendant and inform him of the nature of the charge. Rather, we adopt a flexible and practical approach which emphasizes whether the purpose to be served by the Rule has been furthered by the particular procedure utilized by the district court." 611 F.2d at 199.

Although the court stated that the best procedure was for the trial judge to specifically describe the nature of the charge, it concluded that it was not the only procedure that would satisfy the rule and that the necessary procedure would

> "vary from case to case depending on the complexity of the charges and the personal characteristics of the defendant — including age, education, intelligence, alacrity of his responses, and whether he is represented by counsel." *Id.* at 200.

In applying this principle to the facts before it, the court stated that the rule was complied with sufficiently due to the simple nature of the charge, the appellant's age, his twelfth grade education, his representation by counsel, and the fact that the appellant's description on the record of the crime he committed demonstrated his knowledge of the nature of the offense. *Id.* at 201.

In *Dayton,* the accused had pled guilty to two counts of possession of marihuana with intent to distribute. The trial judge read the counts and asked the accused if he understood the nature of the charges. Dayton answered affirmatively and stated that he had no questions. After noting the substantive requirements of Federal Rule 11, and the provision that the defendant must be informed of the nature of the charge, the court said:

> "[W]e are unable to state a simple or mechanical rule but offer some general observations that we hope will be helpful. For simple charges such as those in this case, a reading of the indictment, followed by an opportunity given the defendant to ask questions about it, will usually suffice. Charges of a more complex nature, incorporating esoteric terms or concepts unfamiliar to the lay mind, may require more explication. In the case of charges of extreme complexity, an explanation of the elements of the offense like that given the jury in its instructions may be required; this, of course, is the outer limit, for if an instruction informs a jury of the nature of the charge sufficiently for it to convict the defendant of it, surely it informs the defendant sufficiently for him to convict himself. We can do no more than commit these matters to the good judgment of the court, to its calculation of the relative difficulty of comprehension of the charges and of the defendant's sophistication and intelligence." 604 F.2d at 937-38.

The court concluded that due to the simple nature of Dayton's charge, the trial judge satisfactorily explained the nature of the charge and Dayton's response was sufficient to demonstrate his understanding. *Id.* at 942-43.

## III

Consistent with the principles espoused in the majority of these state and federal cases, and with the rationale

underlying our decision in *Davis,* Rule 731 c does not impose any ritualistic or fixed procedure to guide the trial judge in determining whether a guilty plea is voluntarily and intelligently entered. The rule does not require that the precise legal elements comprising the offense be communicated to the defendant as a prerequisite to the valid acceptance of his guilty plea. Rather, by its express terms, the rule mandates that a guilty plea not be accepted unless it is determined by the court, after questioning of the defendant on the record, that the accused understands the "nature" of the charge. This, of course, is an essential requirement of the rule and must be applied in a practical and realistic manner. It simply contemplates that the court will explain to the accused, in understandable terms, the nature of the offense to afford him a basic understanding of its essential substance, rather than of the specific legal components of the offense to which the plea is tendered. The nature of some crimes is readily understandable from the crime itself. Necessarily, the required determination can only be made on a case-by-case basis, taking into account the relevant circumstances in their totality as disclosed by the record, including, among other factors, the complexity of the charge, the personal characteristics of the accused, and the factual basis proffered to support the court's acceptance of the plea. *See, e.g., Brady v. United States,* 397 U.S. 742, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970), holding that the voluntariness of a guilty plea "can be determined only by considering all of the relevant circumstances surrounding it." *Id.* at 749. Nothing in *Henderson, supra,* compels the conclusion that a formal recitation of the elements of the offense is ordinarily required as a matter of due process under the Federal Constitution. That case was, as the Court took such pains to point out, decided on unique facts which affirmatively demonstrated, on the record, that the mentally retarded defendant was in total ignorance of the nature of the murder charge to which he pled guilty.

It is true, of course, that a defendant who pleads guilty to a criminal charge waives his constitutional right to a jury trial, and that for the waiver to be valid under the due

process clause it must constitute an intentional relinquishment or abandonment of a known right or privilege. *Boykin, supra; McCarthy, supra; Davis, supra.* The specifically delineated requirements of Maryland Rule 735 governing the waiver of the right to a jury trial, as explicated in *Countess,* are not, however, engrafted upon the provisions of Rule 731 c, as appellees suggest. Granted that each rule is designed to assure that the accused have a basic understanding of the respective rights there sought to be protected, nevertheless, the two rules are separate and distinct and the Court of Special Appeals did not otherwise indicate in its *Priet* decision.

In *Matthews v. State,* 46 Md. App. 172, 416 A.2d 1314 (1980), decided after *Priet,* and clarifying the decision in that case, the Court of Special Appeals held that Maryland Rule 735 d has no application to the acceptance of a plea of guilty under Rule 731 c. It said that Rule 735 d is invoked only if the defendant elects to be tried by the court and that in pleading guilty the defendant elects not to be tried at all, either by court or jury; that Rule 731 c is the only Maryland Rule applicable to the standards that must be met before a plea of guilty may be properly accepted; and, as stated in *Davis,* there is no due process requirement that the constitutional rights waived by the entry of a guilty plea, as articulated in *Boykin,* must be specifically recited before a guilty plea can be validly accepted. The Court of Special Appeals held, in effect, that the test under Rule 731 c is whether the record, taken as a whole, affirmatively discloses that both the constitutional and non-constitutional requirements prescribed by the rule were fully met. It said that in *Priet* it held only that the requirements of Rule 731 c had not been met because the judge failed to inquire on the record of the defendant whether he understood the charges to which he pled guilty. It concluded:

> "By analogy to the mandatory requirement of Rule 735 d that the subject matter of the judge's inquiries be *on the record* (*see Countess v. State, supra,* at 454), we held that the subject matter of the judge's

inquiries under Rule 731 c must also be affirmatively shown by the record. We did not hold that the subject matter of the inquiries under the two Rules need be the same. Nothing in *Priet* is at variance with our holdings in the cases at bar." *Id.* at 178 (emphasis in original).

## IV

We think the Court of Special Appeals was in error in the cases before us when, in reliance upon *Countess,* it concluded that the record did not disclose the requisite inquiry necessary for a determination that the defendants understood the nature of the charge to which each had entered a guilty plea. As indicated earlier in this opinion, the record demonstrates that each defendant was questioned at length concerning the voluntariness *vel non* of his plea, was informed of the penalty for the offense, and of the constitutional and other rights that would be waived by the entry of a guilty plea. While in each case the defendant was youthful and possessed of little formal education, each was represented by counsel with whom he acknowledged discussing the case and his guilty plea. As to this, we note the observation made by the Supreme Court in *Henderson, supra,* 426 U.S. at 647, that unless the contrary clearly appears from the record (as was true in *Henderson),* "it may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit." In each case, the personal responses of the defendant to the questions asked of him were made of record. In each case, the defendant acknowledged that he understood that he was pleading guilty to the particular offense involved, although in no instance does the record particularize the precise basis of the defendant's claimed knowledge that he understood the nature of the offense. It would, we think, in each of the cases before us, exalt formalism over real substance, far beyond the requirements of due process or Rule 731 c, to require that the record disclose the reasons for the

defendant's belief that he understands the nature of the offense; indeed, such a standard would be wholly impracticable, if not impossible of compliance. The test, as we have indicated, is whether, considering the record as a whole, the trial judge could fairly determine that the defendant understood the nature of the charge to which he pleaded guilty.

## The Priet Case

Judge Hormes ascertained from Priet's personal responses to his questions that the defendant understood that he was pleading guilty to robbery with a dangerous and deadly weapon. Priet acknowledged that he had discussed his plea, the facts of the case and possible defenses to the charge with his attorney. The factual basis for the plea, to which Priet signified agreement, disclosed a course of criminal conduct clearly constituting the offense of armed robbery. Priet's responses to all questions asked of him by Judge Hormes were positive and concise, indicating an understanding of what he had been told.[6] The armed robbery charge was a simple one. In view of the record as a whole, we think Judge Hormes could fairly determine that the nature of the offense was fully understood by Priet, as required by Rule 731 c.

## The Pincus Case

After the indictment charging Pincus with having "feloniously, wilfully and of deliberately premeditated malice aforethought" murdered Robert Alverson was read to him, Judge Karwacki questioned the defendant at length concerning his guilty plea to second degree murder. He ascertained from Pincus' personal responses that he understood that he was charged with having murdered Alverson on September 30, 1979, and he personally acknowledged to the judge that he committed the offense. The record

---

**6.** After the guilty verdict was entered, Priet testified at length in mitigation of punishment, during the course of which he volunteered that he had been previously convicted of "grand larceny, petty larceny, and breaking and entering."

discloses that Pincus said he knew the difference between first and second degree murder and had pled guilty to the latter degree of murder because the punishment was less than for first degree murder. The factual basis for the plea showed that after Pincus stabbed the victim five or six times he thereafter stomped upon him with his shoes until he was dead. Pincus said he committed the murder because the victim had disturbed him, and he had become emotional as a result.

We think it clear from the record that Judge Karwacki could fairly conclude that Pincus had a basic understanding that he was charged with having intentionally murdered the victim with malice aforethought, *i.e.,* second degree murder. Unlike *Henderson, supra,* there can be no question in Pincus' case that his plea was not entered in total ignorance of the nature of the offense and of the requisite intent element involved.

## The Vandiver Case

After Vandiver, through his counsel, entered an *"Alford* plea" to the charge of robbery, he took the stand and was extensively questioned by his counsel. Vandiver acknowledged during his testimony that he had discussed the elements of robbery with his counsel and understood what he had been told. He said that he understood the nature of his *Alford* plea and that even though he claimed that he was not guilty, he recognized, in entering the guilty plea, that the State had overwhelming evidence to convict him, and that his guilty plea was in exchange for a favorable plea agreement. He personally acknowledged that his guilty plea was to the offense of robbery. Vandiver agreed with the State's proffered statement of the facts which demonstrated a course of conduct constituting robbery, namely, that the State's evidence would establish that Vandiver accosted the victim on the street, threw her to the ground and seized the valuable contents of her purse.[7]

7. Earlier in the day, in a related case, Vandiver had entered a guilty plea before Judge Howard to robbery with a dangerous and deadly weapon.

Considering the record as a whole, including the simplicity of the offense charged, we have no doubt that Judge Howard could properly determine that the requirement of Rule 731 c that the accused understood the nature of the charge was satisfied in this case.

> *As to No. 469 (Priet): Judgment reversed; case remanded to the Court of Special Appeals for consideration of other issues raised on appeal, but not determined by that court.*
>
> *As to No. 813 (Pincus): Judgment reversed; case remanded to the Court of Special Appeals for entry of a judgment affirming the judgment of the Criminal Court of Baltimore.*
>
> *As to No. 743 (Vandiver): Judgment reversed; case remanded to the Court of Special Appeals for entry of a judgment affirming the judgment of the Criminal Court of Baltimore.*

---

In the course of that proceeding, Vandiver was advised in some detail as to the nature of the offense of principal in the first degree to armed robbery. *See* Vandiver v. State, No. 744, September Term, 1979 (Court of Special Appeals, filed February 22, 1980, *cert. granted,* June 3, 1980).